14 Cal.Rptr.3d 117 (2004)
119 Cal.App.4th 151
Robert LOVEJOY, Plaintiff and Appellant,
v.
AT & T CORPORATION, Defendant and Respondent.
No. C043320.
Court of Appeal, Third District.
June 3, 2004.
*118 Mark C. Barulich for Plaintiff and Appellant.
Watson, Khachadourian & Iams and Kevin R. Iams for Defendant and Respondent.
MORRISON, J.
Robert Lovejoy, individually and doing business as Lovejoy Drilling, filed a lawsuit alleging that AT & T Corporation had changed his telephone service to a toll-free 800 number without his permission and hid that fact from him, a practice known as "slamming." He further alleged that as a result he lost his business. In Lovejoy v. AT & T Corp. (2001) 92 Cal.App.4th 85, 111 Cal.Rptr.2d 711, this court held that Lovejoy's complaint stated a cause of action for fraudulent concealment. On remand AT & T moved for summary judgment, contending there was no concealment because the fact that AT & T was providing toll-free 800 number service was clearly disclosed in the invoices AT & T sent to Lovejoy each month. The trial court agreed and granted the motion.
Lovejoy appeals from the judgment of dismissal, contending there is a triable issue of fact as to whether there was concealment. We agree. Fraudulent concealment includes nondisclosure where there is a duty to disclose. The duty to disclose in the context of changing the provider of telephone service is governed by the provisions of Public Utilities Code section 2889.5, which requires both full disclosure and verification of the customer's agreement. Thus, the duty of disclosure includes both disclosure and knowing receipt of the information disclosed. AT & T provided no evidence that Lovejoy knew of the disclosure. In the absence of undisputed evidence of both disclosure and verification, there is a triable issue of fact whether disclosure alone is adequate to discharge the duty. We reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
This action arises from the allegation that AT & T "slammed" Lovejoy's toll-free *119 800 telephone number, obtaining control over the service without his knowledge or consent, and then concealed the switch. Lovejoy operated a company known as Lovejoy Drilling. Beginning in 1994 the company had a toll-free 800 number through Pacific Bell; it had regular long distance telephone service with AT & T.
In the United States and Canada the inventory of toll-free 800 numbers is maintained and administered by the 800 Service Management System (SMS/800), an independent organization. The customer designates a responsible organization (RESPORG) to administer records for the 800 number and SMS/800.
In February 1996, AT & T forwarded to Pacific Bell a form indicating that AT & T was the new RESPORG for Lovejoy's 800 number. Pacific Bell rejected the form because there was no "wet" or original signature.
On March 1, 1996, AT & T forwarded directly to SMS/800 a RESPORG change authorization form requesting that AT & T become the RESPORG for Lovejoy's 800 number. The form was signed by Betsy Smith of AT & T and indicated she had written authorization from the 800 service subscriber (Lovejoy) authorizing the requested RESPORG change.
AT & T began providing 800 number service to Lovejoy in March 1996. AT & T sent Lovejoy a combined invoice for both his regular long distance service and his 800 number service each month from March through September 1996. Lovejoy also continued to receive a bill for 800 number service from Pacific Bell.
Tina Lovejoy, Lovejoy's wife, handled paying the bills for Lovejoy Drilling. A billing dispute arose after she sent a single check to cover both the home and business phone bills and the business account was not credited. In August 1996, AT & T disconnected the long distance service, including the 800 number service, for nonpayment. Lovejoy eventually paid the disputed amount, about $50.
Lovejoy brought suit against Pacific Bell for damages caused by the loss of his 800 number, alleging breach of contract, fraud and negligence. The complaint was amended to substitute AT & T for a Doe defendant. Lovejoy settled his dispute with Pacific Bell.
Lovejoy moved to amend his complaint in conformity with evidence obtained through discovery. At the same time AT & T moved for summary judgment. The trial court granted the motion to amend the complaint; the amended complaint would not include a breach of contract claim, as Lovejoy had elected not to proceed on that theory against AT & T. The court granted summary adjudication in favor of AT & T on the negligence claim, but found disputed issues of fact as to the fraud claim.
The first amended complaint alleged that AT & T misrepresented it had authorization from Lovejoy to take over Lovejoy's 800 number service and based on this misrepresentation AT & T took over the service. Lovejoy had not authorized AT & T to take over the 800 number service and was unaware AT & T had done so until after the filing of the original complaint. Once AT & T took Lovejoy's 800 number, it hid the charges in the long distance statement. Lovejoy had no reason to check the breakdown of services in the AT & T bill because he did not question the long distance charges.
After a billing dispute arose, AT & T disconnected both long distance service and the 800 number. Lovejoy was unaware his 800 number had been disconnected. In the spring of 1997, Lovejoy learned his 800 number had been reassigned *120 to a customer in Michigan, who received six to 20 calls a day requesting the services of Lovejoy Drilling.
The complaint alleged AT & T made false representations to obtain Lovejoy as a customer. As a result of these misrepresentations, Lovejoy lost his business and was required to file for bankruptcy; he also suffered emotional injury.
AT & T moved for judgment on the pleadings and the motion was granted. The trial court found Lovejoy pled himself out of a fraud cause of action by pleading he was unaware AT & T had taken his 800 number service. Being unaware of AT & T's alleged misrepresentation, Lovejoy had no justifiable reliance on it.
Lovejoy appealed the judgment and this court reversed. (Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th 85, 104, 111 Cal.Rptr.2d 711.) This court agreed the complaint failed to state a cause of action for misrepresentation because it failed to allege Lovejoy relied on AT & T's misrepresentations. "Just the opposite was true: to be successful, ATT's plan required that the switch be concealed from plaintiff so that he would not act on it, a plan which the complaint alleges ATT implemented by hiding the 800 charges in its phone bill." (Id. at pp. 94-95, 111 Cal.Rptr.2d 711.
We found, however, that the complaint did state a valid cause of action for fraudulent concealment. (Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th at p. 95, 111 Cal.Rptr.2d 711.) Reading the complaint liberally, all the elements were present. "Initially ATT `slammed' plaintiff's 800 telephone number, appropriating it for itself through false representation to third parties, but the misrepresentation did not complete the tort. After the `slam,' ATT allegedly suppressed the 800 switch and concealed it from plaintiff by hiding the charges within its long distance bill. The surreptitious switch and its concealment from plaintiff were a breach of duty by ATT to plaintiff, a long-distance customer. It may be inferred that ATT concealed the switch with fraudulent intent, for the purpose of making a profit; it may also be inferred that plaintiff, who was unaware of the switch, would have acted differently had he known of the suppressed fact. Specifically, plaintiff would never have permitted termination of his ATT long-distance service had he known that it would have the simultaneous effect of pulling the plug on his 800 number." (Id. at p. 96, 111 Cal.Rptr.2d 711.)
This court also rejected AT & T's argument that its summary judgment papers precluded any triable issue as to concealment because the monthly statements from AT & T revealed Lovejoy was being charged for 800 number service. (Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th at p. 103, 111 Cal.Rptr.2d 711.) AT & T had offered 65 pages of computer-generated printouts attached to a declaration of an employee. This evidence was insufficient to remove all triable issues. The declaration was imprecise; it simply stated the attachments were forwarded to Lovejoy but did not indicate who sent them or when. AT & T also failed to establish the foundation necessary for the business records exception to the hearsay rule. (Ibid.) We also noted Lovejoy's evidence in opposition: AT & T did not change the account number or account designation after adding 800 number service; Lovejoy continued to receive bills for 800 number service from Pacific Bell; and notices from AT & T about the disconnection of long distance service did not mention that the disconnection also affected 800 number service. (Id. at pp. 103-104, 111 Cal.Rptr.2d 711.)
Finally, in a footnote, this court noted the requirements of Public Utilities Code section 2889.5 at that time and AT & T's *121 failure to offer proof it complied with those requirements. "In light of these apparent violations of California law, ATT's assertion that there was no concealment as a matter of law rings hollow." (Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th at pp. 103-104, fn. 7, 111 Cal.Rptr.2d 711.)
On remand AT & T attempted to rectify the perceived weaknesses in its summary judgment motion. To show there was no triable issue as to concealment, it offered copies of the actual invoices sent to Lovejoy for the months February through April 1996 and copies of the billing data for May through September 1996. A declaration of a credit representative from AT & T established the invoices were business records. A typical monthly statement was seven pages long and the $5.00 charge for 800 number service was shown on pages two and five and the last two pages were devoted to detail about the 800 number service. AT & T also argued, without evidence, that Lovejoy could not establish an intent to defraud and his unawareness of the fact alleged to have been concealed, and that he suffered damages as a result of the concealment.
In opposition, Lovejoy argued the points raised in the Lovejoy decision. He offered declarations from himself and his wife that they never gave AT & T permission to switch the 800 number service and never received notice of the switch. He also provided a declaration from William Schulte, a former director of the California Public Utility Commission.[1] Schulte declared that deregulation in the telecommunications industry and the breakup of AT & T had increased competition and resulted in some unscrupulous and clandestine methods of eliciting customers. He defined "slamming" as the practice of switching a consumer's telephone company without the consumer's consent. The practice was industry-wide in 1996 and getting worse. Its success depended on the expectation that a consumer would not look at the details of the bills.
The trial court granted the motion for summary judgment. The court concluded that given the evidence of disclosure of the 800 number service charge in the phone bills, no reasonable trier of fact could find concealment.

DISCUSSION
Lovejoy contends the trial court erred in granting summary judgment because there was evidence of concealment, as this court discussed in Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th 85, 111 Cal.Rptr.2d 711. Lovejoy contends he had no duty to read the details of his phone bill because he had no reason to believe AT & T was charging him for 800 number service. He contends the trial court's ruling negates the purpose and intent of Public Utilities Code section 2889.5.
"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has met his burden of showing that a cause of action has no merit if he has shown that one or more elements of the cause of action cannot be established. (Id., subd. (p)(2).)
"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed *122 or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 612-613, 7 Cal.Rptr.2d 859.)
We consider whether AT & T has shown that Lovejoy cannot establish one or more of these elements.

Concealment or Suppression of Material Fact
"Concealment is a term of art which includes mere nondisclosure when a party has a duty to disclose. [Citations.]" (Reed v. King (1983) 145 Cal.App.3d 261, 265, 193 Cal.Rptr. 130.) Whether the disclosure was adequate to defeat a claim of concealment depends on the scope of the duty to disclose. In the context of switching telephone service providers, the duty to disclose is set forth in Public Utilities Code section 2889.5. In 1996, when AT & T took over Lovejoy's 800 number service, Public Utilities Code section 2889.5 provided in part as follows:
"(a) No telephone corporation, or any person, firm, or corporation representing a telephone corporation, shall make any change or authorize a different telephone corporation to make any change in the provider of any telephone service for which competition has been authorized of a telephone subscriber until all of the following steps have been completed:
"(1) If a subscriber is solicited by telephone or by some other method, other than by contact in person, by a telephone corporation or its independent representative, other than an employee of the telephone corporation, the corporation or its representative shall do all of the following:
"(A) Thoroughly inform the subscriber of the nature and extent of the service being offered.
"(B) Specifically establish whether the subscriber intends to make any change in his or her telephone corporation and explain any charges associated with that change, and verify the subscriber's decision through one of the following means:
"(i) Where a representative is acting on behalf of the corporation, a followup call by the telephone corporation, or a representative of the telephone corporation who does not receive a commission for that sale, shall be made to verify the subscriber's intent to change his or her telephone corporation.
"(ii) Mail to the subscriber an information package seeking confirmation of his or her change in telephone corporation and describing the new service, including a postage prepaid postcard that the customer can use to deny, cancel, or confirm a service order, as soon as possible, and wait 14 days after the information package is mailed before making the change in the telephone corporation, and make the change only if the subscriber does not cancel the change.
"(iii) Verify the subscriber's change in his or her telephone corporation by obtaining the subscriber's signature on a document fully explaining the nature and extent of the action. The document shall be a separate document whose sole purpose is to explain the nature and extent of the action.
"(iv) Obtain the subscriber's authorization through an electronic means that takes the information including the calling number and confirms the change to which the subscriber has given his or her consent." *123 (Stats.1995, ch. 664, § 1, pp. 5149-5150.)
Public Utilities Code section 2889.5 (hereafter section 2889.5) was intended to protect the consumer. In enacting the previous version of the statute, the Legislature made that intent manifest: "It is the intent of the Legislature to ensure that adequate consumer protections are in place if and when competition is authorized." (Stats.1992, ch. 359, § 1, subd. (c), p. 1383.) Legislation designed to protect the public should be broadly construed to effectuate its purpose. (Dept. of Agriculture v. Tide Oil Co. (1969) 269 Cal.App.2d 145, 154, 74 Cal.Rptr. 799.)
Since section 2889.5 defines the duty of disclosure, its requirements inform our analysis of whether there was concealment or suppression of a material fact. The issue is not, as AT & T contends, simply whether there was a disclosure. Rather, the issue is whether there was a disclosure consistent with the duty to disclose. The duty of disclosure under the 1996 version of section 2889.5 required that AT & T do more than simply disclose that it was providing the 800 number service to Lovejoy. AT & T also had to fully disclose the nature and extent of the service. The duty of disclosure also included verifying that Lovejoy agreed to the change. The statute provided four means of verification: a follow-up call, an information package, obtaining the subscriber's signature, or obtaining authorization through electronic means. In enacting these detailed requirements, the Legislature presumably knew that a change in telephone service providers would be revealed in subsequent billing statements and found that limited disclosure inadequate. Instead, the Legislature required verification, proof that the subscriber knew of and agreed to the change.
To establish there was no concealment or suppression of a material fact as a matter of law, AT & T would have to establish it made full disclosure consistent with the duty of disclosure. The simplest way to do this would be to show compliance with the requirements of section 2889.5. AT & T offered no evidence it complied with that statutory duty. In contrast, Lovejoy provided evidence that AT & T did not. Declarations from him and his wife stated they did not consent to the change and AT & T did not give notice of the change. AT & T provided only evidence that it disclosed the change in the provider of 800 number service in the monthly statements. On its face, this limited disclosure fails to comply with the requirements of section 2889.5 because it fails to establish as a matter of law both disclosure and knowing receipt of the disclosure. Absent undisputed evidence of full disclosure, AT & T has failed to show that Lovejoy cannot establish that AT & T concealed or suppressed a material fact.
AT & T argues that the provisions of section 2889.5 are irrelevant because the only issue before the court is whether AT & T hid in the billing that it was providing 800 number service. AT & T reads the complaint too narrowly and attempts to divorce the concealment from the allegation of slamming. The two concepts are intertwined and together constitute the tort Lovejoy alleges. As this court stated in Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th at page 96, 111 Cal.Rptr.2d 711: "It is apparent that the alleged tort committed by ATT was not merely the slamming of plaintiff's 800 telephone number. This conduct merely set the stage for ATT's willful suppression of material fact, which forms the basis of plaintiff's cause of action for negative fraud." Section 2889.5 was designed to protect the public from the practice of slamming. Its provisions set the standard for determining whether *124 there has been full disclosure or whether the telephone company engaged in fraudulent concealment.
The failure to comply with section 2889.5 raises a triable issue of fact as to the first element of the tort of fraudulent concealment. It is a question of fact for the jury whether AT & T's subsequent monthly disclosure in the phone bill was sufficient to fulfill the duty of disclosure which required both full disclosure of the nature and extent of the service AT & T provided and Lovejoy's agreement to the change in the service provider.

Duty to Disclose
It is undisputed that there was a duty to disclose the change in the provider of the 800 service; the duty was imposed by section 2889.5. Lovejoy established this second element of fraudulent concealment.

Intent to Defraud
In Lovejoy v. AT & T Corp., supra, 92 Cal.App.4th 85, at page 96, 111 Cal.Rptr.2d 711, this court stated: "It may be inferred that ATT concealed the switch with fraudulent intent, for the purpose of making a profit . . . ." The failure to disclose the switch as required by section 2889.5 supports an inference of an intent to defraud.
AT & T contends Lovejoy cannot establish the intent to defraud because Lovejoy would have to show that AT & T concealed that it was providing 800 number service to induce Lovejoy to cancel his 800 number service. In Lovejoy, this court rejected the contention that in a fraud cause of action it is necessary the defendant intend to cause the plaintiff to suffer particular damage. (Id. at p. 92, 111 Cal.Rptr.2d 711.) AT & T need not have intended that Lovejoy lose his 800 number; it is sufficient that AT & T intended to defraud him by taking his money for 800 number service without his knowledge and consent. AT & T offered no evidence, such as an attempt to comply with the statute, to refute this element. There is a triable issue of fact as to intent to defraud.

Unawareness of Concealed Fact
AT & T next contends Lovejoy cannot establish he was unaware of the change in the provider of his 800 number service. AT & T argues this fact was disclosed in the monthly phone bills and Lovejoy was unaware only because he chose not to read the bills. AT & T asserts that carelessness in reading documents bars a subsequent claim of fraud, citing Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 423, 58 Cal.Rptr.2d 875, 926 P.2d 1061.)
At issue in Rosenthal was whether the plaintiffs were bound by arbitration agreements contained in client agreements they signed with the defendants. The plaintiffs contended there was fraud in the execution of the agreements and they failed to read the agreements due to on their reliance on misrepresentations of the defendants. The Supreme Court held "one party's unreasonable reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract." (Rosenthal v. Great Western Fin. Securities Corp., supra, 14 Cal.4th at p. 423, 58 Cal.Rptr.2d 875, 926 P.2d 1061.)
Rosenthal is distinguishable. While it is usually unreasonable not to read or otherwise learn the essential terms of a contract one signs, here Lovejoy did not sign a contract. Indeed, there was no agreement; Lovejoy alleged AT & T acted unilaterally without Lovejoy's knowledge or consent. AT & T's position that it is always *125 unreasonable as a matter of law to fail to read an entire bill would impose a burden on consumers that we cannot accept. For example, assume that Lovejoy had no telephone service with AT & T and AT & T slammed his 800 number and then sent him monthly bills for the service. It would have been reasonable for Lovejoy to assume the bills were unwanted solicitations and to discard them without reading them. Under AT & T's view, Lovejoy would be barred from a claim for fraudulent concealment because he failed to read what he reasonably thought was junk mail. AT & T failed to establish that it was unreasonable as a matter of law for Lovejoy not to read his phone bills and learn of the switch in the provider of his 800 service. There is a triable issue of fact whether Lovejoy was aware that AT & T was providing that service.

Damages
Finally, AT & T contends Lovejoy cannot establish that he sustained damages as a result of the alleged concealment. AT & T asserts any damage Lovejoy suffered was due to his canceling his service with AT & T because of nonpayment and not due to the alleged concealment. Lovejoy's position, however, is that he would not have allowed his service with AT & T to be cancelled if he had known his 800 number service would also be cancelled or he would have taken steps to ensure the continuation of his 800 number. AT & T provided no evidence to defeat this element. There is a triable issue of fact as to damages.
AT & T has failed to show that one or more elements of fraudulent concealment cannot be established and that it is entitled to judgment as a matter of law. Lovejoy established the second element and there are triable issues of fact as to the other four. Accordingly, it was error to grant the motion for summary judgment.

DISPOSITION
The judgment is reversed. Lovejoy shall recover costs on appeal.
We concur: DAVIS, Acting P.J., and HULL, J.
NOTES
[1] AT & T successfully objected to the more opinionated portions of Schulte's declaration.