*772 Opinion
RUSHING, P. J.
This case involves a dispute between former employees' of a company and the company’s sole shareholders over a promised retirement bonus that was never paid.
Plaintiffs, Irma Moncada, Randy Morris and Everardo Serrano, worked for West Coast Quartz Corporation (West Coast). Defendants Paul Maloney and Nancy Tkalcevic were the owners and sole shareholders of West Coast. Defendants were preparing to sell West Coast, and wanted plaintiffs to continue.to work for the company until the sale was complete. To accomplish that end, defendants repeatedly promised plaintiffs that if they continued to work for West Coast until the sale, they would be paid a bonus from the sale proceeds that would be sufficient for them to retire. Plaintiffs remained at West Coast for five years following defendants’ initial promise of the retirement bonus, rejecting job offers from other companies, and opportunities to move out of the area. When defendants sold West Coast in 2009 for approximately $30 million, they did not pay plaintiffs the promised bonus.
Plaintiffs filed suit against defendants for fraud and breach of contract, among other causes of action. Following the trial court sustaining defendants’ demurrer to their first amended complaint with leave to amend, plaintiffs opted to stand on the pleading. As a result, the trial court dismissed the first amended complaint and entered judgment in favor of defendants. Plaintiffs appeal the judgment.
Statement of the Facts[1] and Case
In June 2004, the plaintiffs, Ms. Moncada, Mr. Morris and Mr. Serrano, were all key long-term employees of defendant, West Coast. At the time, the sole shareholders of West Coast were defendants Mr. Maloney, the president and chief financial officer, and Ms. Tkalcevic, the chief executive officer. On June 22, 2004, Mr. Maloney and Ms. Tkalcevic held a meeting with plaintiffs and other key long-term employees at Ms. Tkalcevic’s home. During the meeting, Ms. Tkalcevic and Mr. Maloney told those present that they were planning to sell West Coast, and the process would take between two and 10 years to complete. Ms. Tkalcevic and Mr. Maloney also said that they did not want any of the key employees of the company to quit during the sale process, and represented to those present that they would receive stock or stock options in West Coast so that when the company actually sold, they would be rewarded for their loyalty.
Following the meeting in June, seeing no action from defendants regarding the grant of stock or stock options in West Coast, some managers and key *773 employees began to leave the company. On August 27, 2004, Mr. Maloney told Ms. Moncada that he and Ms. Tkalcevic did not want to reward disloyal employees, and planned to change the way they would reward employees who stayed with the company until the completed sale. Mr. Maloney told Ms. Moncada that he and Ms. Tkalcevic would pay the employees who stayed with the company a bonus when the company sold that would be enough for the employees to retire.
Following Mr. Maloney’s first statement of his promise to pay plaintiffs a bonus upon the sale of the company in August 2004, he repeated the promise numerous times whenever an employee expressed doubt or a wish to leave the company. On September 5, 2005, Mr. Maloney told Ms. Moncada that he was increasing her pay and reiterated that she would receive a bonus of enough money to retire when the company was sold. On November 20, 2005, when Ms. Moncada said she wanted to leave the company, Mr. Maloney and Ms. Tkalcevic reiterated their promise that when the company was sold, they would pay her a bonus that would be sufficient to retire. Ms. Moncada continued to work for the company. On August 15, 2006, Mr. Maloney told Ms. Moncada that he and Ms. Tkalcevic were consulting with financial advisors to determine an amount of the bonus for the employees when the company sold that would minimize tax liability.
With regard to plaintiff Mr. Serrano, Mr. Maloney reiterated the same specific promise that if Mr. Serrano continued to work at West Coast until the company’s sale, he would be paid a bonus in an amount sufficient for him to retire. Mr. Maloney repeated the promise to Mr. Serrano on February 7, 2005, January 26, 2006, and May 17, 2006, when Mr. Maloney increased Mr. Serrano’s pay and gave him an update on the progress of the sale, saying, “[Y]ou guys will get the bonus, enough to retire.” On June 3, 2006, Mr. Serrano told Mr. Maloney he was considering moving to Bakersfield. In response, Mr. Maloney reiterated the promise of the bonus if he stayed with West Coast until the sale. Mr. Maloney repeated the terms of the promise on August 25, 2006, and April 14, 2007.
Mr. Maloney reiterated the retirement bonus many times to plaintiff Mr. Morris between 2004 and 2009. Mr. Morris turned down nine offers of employment from other companies during that period in reliance on defendants’ promise of a bonus at file time of West Coast’s sale.
In November 2009, plaintiffs learned that defendants had sold and transferred all of their shares in West Coast for the amount of $30.21 million. Plaintiffs never received the bonus for retirement that defendants promised to them.
*774 In April 2010, plaintiffs filed their original complaint against defendants asserting causes of action for misrepresentation-concealment, breach of contract, promissory estoppel, intentional infliction of emotional distress, estoppel in pais, and violation of Business and Professions Code section 17200.
Defendants demurred to the original complaint and on September 7, 2010, the trial court sustained the demurrer with leave to amend, except as to the cause of action for estoppel in pais, to which the court sustained the demurrer without leave to amend.
Plaintiffs filed a first amended complaint on October 4, 2010, that alleged causes of action for misrepresentation-concealment, breach of contract and implied covenants, promissory estoppel, intentional infliction of emotional distress, and negligent misrepresentation.
Defendants demurred to the first amended complaint. On February 9, 2011, the court sustained the demurrer with leave to amend, except as to the cause of action for intentional infliction of emotional distress, to which the court sustained the demurrer without leave to amend. Plaintiffs did not file a second amended complaint, and instead, chose to stand on the first amended complaint. As a result, the trial court dismissed the first amended complaint pursuant to Code of Civil Procedure section 581, subdivision (f)(2), and entered a judgment in favor of defendants. Plaintiffs filed a notice of appeal of the judgment.
Discussion
Plaintiffs assert on appeal that the trial court erred in sustaining the demurrer to the first amended complaint with leave to amend, and dismissing the action with prejudice. In addition, plaintiffs argue the court erred in sustaining the demurrer to the action for estoppel in pais alleged in the original complaint, without leave to amend.
This appeal involves review of two separate orders. The first is the trial court’s order of September 7, 2010, wherein it sustained defendants’ demurrer to plaintiffs’ cause of action for estoppel in pais without leave to amend. We review this order as an “intermediate ruling . . . which involves the merits or necessarily affects the judgment or order appealed from . . . .” (Code Civ. Proc., § 906.)
The second order was on February 9, 2011, when the trial court sustained defendants’ demurrer to the first amended complaint with leave to amend. As this court stated in County of Santa Clara v. Atlantic Richfield Co. (2006) 137 Cal.App.4th 292 [40 Cal.Rptr.3d 313], “[w]hen a demurrer is sustained with *775 leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer. [Citation.] On the other hand, where the plaintiff chooses to amend, any error in the sustaining of the demurrer is ordinarily waived.” (Id. at p. 312.)
The issue raised in this appeal is entirely a matter of law and we hold that the first amended complaint states a cause of action. A demurrer is properly sustained when the complaint “does not state facts sufficient to constitute a cause of action.” (Code Civ. Proc., § 430.10, subd. (e).) “On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. [Citation.] . . . [f] Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. [Citation.] Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the legal sufficiency of the complaint.” (Los Altos Golf & Country Club v. County of Santa Clara (2008) 165 Cal.App.4th 198, 203 [80 Cal.Rptr.3d 340].) “Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.” (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Misrepresentation-concealment

Plaintiffs assert the first amended complaint alleges facts sufficient to state a cause of action for misrepresentation-concealment. Plaintiffs allege that defendants concealed the fact that they wanted plaintiffs to remain employed at West Coast to make the company more attractive to potential buyers, and only intended to give plaintiffs a nominal or no bonus for remaining employed.
Concealment is a species of fraud or deceit. (See Civ. Code, §§ 1710, subd. 3, 1572, subd. 3; Lovejoy v. AT&T Corp. (2004) 119 Cal.App.4th 151, 158 [14 Cal.Rptr.3d 117] (Lovejoy).) “[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.” (Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 612-613 [7 Cal.Rptr.2d 859]; see Lovejoy, supra, 119 Cal.App.4th at pp. 157-158.)
*776 “Promissory fraud,” as is alleged in this case, is a subspecies of the action for fraud and deceit. “A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. [Citations]” (Lazar v. Superior Court (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981].)
Every element of a fraud cause of action must be specifically pleaded. (Service by Medallion, Inc. v. Clorox Co. (1996) 44 Cal.App.4th 1807 [52 Cal.Rptr.2d 650]; Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157 [2 Cal.Rptr.2d 861].) This pleading requirement of specificity applies not only to the alleged misrepresentation, but also to the elements of causation and damage. As this court stated in Service By Medallion, Inc., “In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the ‘detriment proximately caused’ by the defendant’s tortious conduct. (Civ. Code, § 3333.) Deception without resulting loss is not actionable fraud. [Citation.] ‘Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown.’ ” (Service by Medallion, Inc. v. Clorox Co., supra, 44 Cal.App.4th at p. 1818; see Cooper v. Equity Gen. Insurance (1990) 219 Cal.App.3d 1252, 1262 [268 Cal.Rptr. 692] [“in California, every element of a cause of action for fraud must be alleged both factually and specifically, and the policy of liberal construction of pleadings will not be invoked to sustain a defective complaint”].)
The allegations in the first amended complaint of plaintiffs’ damages as a result of defendants’ fraud include the following: “[a]s a direct and proximate result of the concealment, failure to inform and representations of Defendants, Plaintiffs have: [][] A. Been damaged in an amount equal to the monies which would have allowed them to retire and stop working when West Coast was sold; [j[] B. Sustained damages in the form of missed opportunities for other employment and residence opportunities; [<J[] C. Sustained damages in the form of uncompensated time for work and travel over and above [the] normal in continuing to advance the profitability of West Coast and take over the duties and responsibilities of managers and key employees who had left West Coast; [f] D. Sustained damages in the form of emotional distress and mental anguish. [][] The exact amount of the aforesaid damages is not yet fully ascertained but is within the jurisdictional limits of this Court and will be established according to proof at the time of trial.”
Plaintiffs’ allegations, if true, would establish all the elements of promissory fraud. As detailed above, plaintiffs allege that, in order to induce them to continue to work at West Coast until the company sold, defendants intentionally represented to plaintiffs that defendants would pay plaintiffs a bonus at *777 the time of the sale that would be sufficient for plaintiffs to retire. Plaintiffs further allege that defendants’ representations were false, in that defendants intended to pay them a nominal bonus (or no bonus at all) at the time of sale. Plaintiffs allege they justifiably relied on the representations, because defendants repeatedly assured them of the bonus. Plaintiffs further allege they did not seek alternative employment or residential opportunities and remained at West Coast because of the promise of the bonus. These allegations adequately state a cause of action for promissory fraud as traditionally understood.

Breach of Contract/Implied Covenants

Plaintiffs assert the allegations of breach of contract are sufficiently stated in the first amended complaint, and that the terms of the contract between them and defendants were certain and definite.
The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. “ ‘Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.’ ” (Ladas v. California State Auto. Assn. (1993) 19 Cal.App.4th 761, 770 [23 Cal.Rptr.2d 810] (Ladas).)
“ ‘In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard. It must take language as it is and people as they are. All agreements have some degree of indefiniteness and some degree of uncertainty ....’” (Rivers v. Beadle (1960) 183 Cal.App.2d 691, 695 [7 Cal.Rptr. 170].) Moreover, “ ‘[t]he law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained.’ ” (Id. at p. 697.)
In the instant case, defendants told plaintiffs that if they stayed and continued to work for West Coast until the company sold, defendants would give plaintiffs bonuses that would be sufficient for plaintiffs to retire. The agreement between plaintiffs and defendants was clear and certain; the parties knew their obligations under the agreement. Moreover, the agreement was also sufficiently certain to determine the existence of a breach. Plaintiffs stayed and worked at West Coast from the time of the initial promise in 2004, until 2009 when West Coast was sold for approximately $30 million. Defendants did not pay plaintiffs the promised bonus at the time of the sale.
Defendants assert that the promise of an amount sufficient to retire is vague and unenforceable, because it is an unspecified amount and subject to different interpretations. However, in Sabatini v. Hensley (1958) 161 *778 Cal.App.2d 172, 177 [326 P.2d 622], the court affirmed a jury verdict that awarded an unpaid bonus to an employee. Although the employer argued the offer of the bonus was unenforceable because the amount was not fixed, and there was no formula to set the amount agreed upon by the parties, the court held, “The failure to specify the amount or a formula for determining the amount of the bonus does not render the agreement too indefinite for enforcement. It is not essential that the contract specify the amount of the consideration or the means of ascertaining it. (Civ. Code, § 1610.)” (Sabatini, supra, 161 Cal.App.2d at p. 175.)
Defendants cite Rochlis v. Walt Disney Co. (1993) 19 Cal.App.4th 201 [23 Cal.Rptr.2d 793] (Rochlis), disapproved on other grounds in Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022], and Ladas, supra, 19 Cal.App.4th 761, for the proposition that the terms of the alleged agreement between themselves and plaintiffs were too vague and indefinite to be enforceable.
In Ladas, the unenforceable promise was “An amorphous promise to ‘consider’ what employees at other companies [were] earning” when setting commission rates. (Ladas, supra, 19 Cal.App.4th at p. 771.) In finding the promise unenforceable, the court noted the numerous uncertainties which would defeat enforcement of the promise, asking, “By what standard would a court or a jury determine that the company failed to meet its obligation to ‘consider’ commissions earned by competitors?” and concluding that “The nature of the obligation asserted provides no rational method for determining breach or computing damages.” (Ibid.)
Here, unlike Ladas, defendants promised to pay plaintiffs a bonus upon the sale of West Coast. A court or jury could easily determine if defendants failed to meet this obligation by evaluating whether such bonus was paid. Moreover, unlike Ladas, where damages would be difficult to compute because the promise was to consider what other employees were earning, the promise here was to pay plaintiffs an amount that would be sufficient to retire. As stated in the first amended complaint, the bonus amount would be determined “using information about the Plaintiffs’ debts and obligations, their lifestyles at that time and actuarial information sufficient to allow financial planners to set a specific amount for each of them given their specific circumstances at that time.” Contrary to defendants’ argument, retirement amounts are not vague or indefinite; rather, they are readily determined using standard formulae and actuarial tables.
Rochlis, in which an employee alleged breach of an employment contract and constructive discharge, is also not on point. In Rochlis, the plaintiff claimed that the defendant had promised that he would receive salary *779 increases and bonuses “appropriate” to his responsibilities and he would have “activeQ and meaningful[]” participation in creative decisions. (Rochlis, supra, 19 Cal.App.4th at p. 213.) The court held that these terms were too vague and indefinite, and thus could not support a breach of contract claim. (Id. at pp. 213-214.) The court also reasoned the plaintiff’s claim was beyond regulation by the court, because it would require the court to become involved in the daily operations of a business. (Id. at p. 214.)
Our Supreme Court later commented on Rochlis in Scott v. Pacific Gas & Electric Co. (1995) 11 Cal.4th 454 [46 Cal.Rptr.2d 427, 904 P.2d 834] (Scott), disapproved on other grounds in Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 352, footnote 17 [100 Cal.Rptr.2d 352, 8 P.3d 1089], “courts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer’s inherent authority to manage its enterprise.” (Scott, supra, 11 Cal.4th at p. 473.) The claim of vagueness of contract terms was raised in Scott following a jury trial; not at the pleading stage as we are in the present case. The Supreme Court found the implied-in-fact employment contract was enforceable, and ordered the original jury verdict that the contract was valid reinstated. (Ibid.)
Defendants’ promise in this case was not vague, nor did it constrain defendants from managing West Coast. (See, e.g., Scott, supra, 11 Cal.4th at p. 473.) Enforcing defendants’ promise would not potentially propel the court into daily operations of the company. (See, e.g., Rochlis, supra, 19 Cal.App.4th at p. 213.) The promise was clear and definite: continue working at West Coast until the company is sold, and at that time, we will pay you a bonus that will enable you to retire. Plaintiffs understood defendants’ promise, and acted on their end by continuing to work at West Coast until the company was sold. The first amended complaint alleges facts sufficient to state a cause of action for breach of contract.

Promissory Estoppel

Plaintiffs assert the allegations of promissory estoppel are adequately stated in their first amended complaint.
“In California, under the doctrine of promissory estoppel, ‘A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.’ [Citations.] Promissory estoppel is ‘a doctrine which employs equitable principles to satisfy the requirement that consideration must be *780 given in exchange for the promise sought to be enforced.’ ” (Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority (2000) 23 Cal.4th 305, 310 [96 Cal.Rptr.2d 747, 1 P.3d 63].) The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages “ ‘measured by the extent of the obligation assumed and not performed.’ ” (Toscano v. Greene Music (2004) 124 Cal.App.4th 685, 692 [21 Cal.Rptr.3d 732].)
Plaintiffs’ allegations in the first amended complaint satisfy the requirements of promissory estoppel. Specifically, defendants promised to pay them an amount sufficient to retire upon the sale of West Coast if they remained employed. As discussed above in regard to the breach of contract cause of action, plaintiffs’ promise was sufficiently clear and definite. Plaintiffs relied on this promise to their detriment by remaining employed at West Coast, and forgoing other employment and residential opportunities.

Intentional Infliction of Emotional Distress

Plaintiffs argue the allegations in the first amended complaint adequately state a cause of action for intentional infliction of emotional distress.
“ ‘A cause of action for intentional infliction of emotional distress exists when there is “ ‘ “ ‘(1) extreme and outrageous conduct by the defendant with the intention of causing,'or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff’s suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant’s outrageous conduct.’ ” ’ ” [Citations.]’ [Citation.]” (Plotnik v. Meihaus (2012) 208 Cal.App.4th 1590, 1609 [146 Cal.Rptr.3d 585].)
In order for conduct to be considered outrageous for the purpose of tort liability, it “must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.” (Trerice v. Blue Cross of California (1989) 209 Cal.App.3d 878, 883 [257 Cal.Rptr. 338]; see, e.g., Fletcher v. Western National Life Ins. Co. (1970) 10 Cal.App.3d 376, 397-398 [89 Cal.Rptr. 78] [insurance agent’s threatened and actual refusals to pay and threatening communication in bad faith to settle nonexistent dispute]; Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493, 496-497 [86 Cal.Rptr. 88, 468 P.2d 216] [supervisor shouting insulting epithets, terminating employment, and humiliating plaintiff]; Golden v. Dungan (1971) 20 Cal.App.3d 295, 305 [97 Cal.Rptr. 577] [process server knowingly and maliciously banging on door at midnight].)
Here, the allegations in the first amended complaint consist of defendants misleading plaintiffs into believing they would be compensated in an amount *781 that would allow them to retire if they continued to work for West Coast until the company was sold. While the allegations of defendants’ conduct, if true, demonstrate a callous disregard for plaintiffs’ professional and personal well-being, the alleged conduct as stated is not extreme or outrageous to support a cause of action for intentional infliction of emotional distress.

Negligent Misrepresentation

In addition to the cause of action for promissory fraud, plaintiffs also allege a cause of action for negligent misrepresentation related to defendants’ promise of a retirement bonus in their first amended complaint.
In Intrieri v. Superior Court (2004) 117 Cal.App.4th 72 [12 Cal.Rptr.3d 97] (Intrieri), this court stated the elements for a cause of action for negligent misrepresentation, and the difference between that and an action for fraud. “The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar. Pursuant to Civil Code section 1710, both torts are defined as deceit. However, the state of mind requirements are different. ‘Fraud is an intentional tort, the elements of which are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]’ [Citation.] Negligent misrepresentation lacks the element of intent to deceive. Therefore, ‘ “[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.” [Citation.]’ [Citation.]” (Id. at pp. 85-86, fn. omitted.)
In this case, plaintiffs allege the following in their cause of action for negligent misrepresentation: “Defendants were aware that the promises and representations made to Plaintiffs were not accurate in light of information they had in hand at that time as alleged hereinabove. Defendants also undertook to conceal from Plaintiffs their lack of information and failure to make the promises and representations accurately. [][]... The promises and representations by Defendants as aforesaid were made with the intent to induce Plaintiffs to act as set forth hereinabove.”
Plaintiffs’ allegations do not state a cause of action for negligent misrepresentation. Notably, there is no allegation that defendants made any representation to plaintiffs “ ‘ “honestly believing that [the representations] are true, but without reasonable ground for such belief.” ’ ” (Intrieri, supra, 117 Cal.App.4th at p. 86.) Indeed, the allegations of misrepresentation contain the element of intent, and knowledge that the information was inaccurate. As such, the allegations are inconsistent with the requirements for a cause of action for negligent misrepresentation.

*782
Estoppel in Pais

In the original complaint, plaintiffs alleged a cause of action for estoppel in pais. The trial court sustained defendants’ demurrer to that cause of action without leave to amend on the ground that such a cause of action may not be asserted in California. On appeal, plaintiffs argue the trial court erred in sustaining the demurrer, and that estoppel in pais is a valid cause of action in California.
“Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. ‘Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.’ [Citations.] The doctrine is defensive in nature only, and ‘operates to prevent one [party] from taking an unfair advantage of another.’ [Citation.]” (San Diego Mun. Credit Union v. Smith (1986) 176 Cal.App.3d 919, 922-923 [222 Cal.Rptr. 467].)
In Behnke v. State Farm General Ins. Co. (2011) 196 Cal.App.4th 1443 [127 Cal.Rptr.3d 372], the court reiterated that California does not recognize an independent cause of action for equitable estoppel; “[A]s Witkin . . . explains, ‘ “[t]he [equitable estoppel] doctrine acts defensively only.” ’ (13 Witkin, Summary of Cal. Law [(10th ed. 2005)] Equity, § 190, p. 527; see also Central National Ins. Co. v. California Ins. Guarantee Assn. (1985)165 Cal.App.3d 453, 460 [211 Cal.Rptr. 435] [equitable estoppel ‘must be pleaded . . . either as a part of the cause of action or as a defense’].) As a stand-alone cause of action for equitable estoppel will not lie as a matter of law . . . .” (Id. at p. 1463.)
As estoppel in pais cannot be stated as an independent cause of action in California, the trial court was correct in sustaining defendant’s demurrer to this allegation in the original complaint.
In sum, the first amended complaint alleges facts sufficient to state causes of action for fraud, breach of contract, and promissory estoppel, and fails to adequately allege causes of action for intentional infliction of emotional distress, negligent misrepresentation, and estoppel in pais.
Disposition
The order sustaining the demurrer to the first amended complaint with leave to amend is reversed. Defendants are ordered to answer the first *783 amended complaint on the causes of action for misrepresentation, breach of contract, and promissory estoppel.
Premo, J., concurred.

 The facts are taken from the first amended complaint.