Filed 10/16/14  Christie CA2/ 6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DANITA CHRISTIE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>MARK A. LESTER, et al.,<br><br>     Defendants and Respondents. | 2d Civil No. B253247<br>(Super. Ct. No. 56-2013-440433-CU-FR-VTA)<br>(Ventura County) |

Danita Christie, proceeding in propria persona, appeals from an order granting special motions to strike her complaint pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1]  As defendants, the complaint named two law firms (Jones & Lester, LLP; Renshaw and Associates, APLC) and the firms' members: James G. Jones, Mark A. Lester, Steven J. Renshaw, and Christine Renshaw.  Defendants are hereafter collectively referred to as respondents.  Appellant concedes that her claims arose from constitutionally protected activity.  She contends that the trial court erred in granting the anti-SLAPP motions because she demonstrated a probability of prevailing on the merits.  We disagree and affirm.

*Background*

Appellant and Paulette Kimball (Paulette) were sisters.  Paulette died in January 2012.  They were beneficiaries of their parents' trust: the Schwarz Family Trust (Trust).  The

---

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

Trust instrument was signed in California in 1991. It provided that the Trust "shall be governed by the laws of California."

Appellant's and Paulette's father died in 1999. Their mother, Mary Schwarz (Mary), became sole trustee. In 2005 Mary amended the Trust, "naming [appellant] beneficiary of all trust property with her wish that [appellant] provide for Paulette during Paulette's lifetime." The amendment named appellant as the sole successor trustee. Appellant resided in San Diego.

Paulette resided in Montana. In March 2007, when Mary was 91 years old, she moved from California to Montana to live with Paulette. In December 2007 Mary signed a will naming Paulette as her sole heir. In January 2008 Mary signed a grant deed removing her California residence from the Trust and conveying it to herself. "On February 28, 2008, Mary was certified as 'incompetent' by her Montana physician." In June and July 2008 a Montana court appointed Paulette as Mary's temporary guardian. It appointed Bitterroot Payee Services, Inc., as her temporary conservator.

In June 2008 in Ventura County, appellant filed an action against Paulette seeking to annul the deed by which Mary had conveyed her California residence from the Trust to herself. The complaint alleged that Paulette had "fraudulently induced Mary to remove the [residence] from the trust weeks before Mary was declared incompetent by her doctor." Appellant represented herself until May 2009, when she retained respondent Steven Renshaw (Renshaw). Paulette retained respondent Jones & Lester. In 2012 the Ventura County court entered judgment in Paulette's favor.

In November 2008 the Montana court issued an order in which it concluded: "The narrow question of title to the [California] Property is a local cause, over which the California Superior Court has exclusive jurisdiction." "Otherwise," the court continued, Montana "has exclusive jurisdiction over all of the assets of [Mary], including the [California] property." The court reasoned: "The Montana District Court has exercised its powers to protect Mary's property through the [appointment of a] temporary conservator, Bitterroot Payee Services, Inc. [Citation.] As such, the court has invoked its 'exclusive jurisdiction to determine how the estate of the protected person . . . shall be managed,

2

expended, or distributed to or for the use of the protected person or any of [her] dependents.' [Citation.]" The court ordered appellant to "deliver to the temporary conservator . . . all monies and funds of Mary Schwarz or the Schwarz Family Trust over which [appellant] has exerted any power or control, direct or indirect."

Mary died in December 2008. "Paulette claimed Mary's California residence under the will." Pursuant to the 2005 amendment of the Trust, appellant became the sole successor trustee.

In July 2009 Jones & Lester, acting as Paulette's counsel, filed in Ventura County a petition relating to the Trust. The petition sought (1) the removal of appellant as trustee, (2) damages for appellant's breach of trust, (3) an order requiring appellant to deliver to the Trust $129,000 that she had removed from a California account that belonged to Mary, and (4) an accounting of appellant's use of the $129,000. According to appellant, the $129,000 and the California residence were Mary's "only assets."

As Exhibit E to Paulette's petition, counsel attached the November 2008 Montana court order. The same order was attached as Exhibit E to Paulette's " 'First Supplemental Petition' " filed in October 2010. The First Supplemental Petition requested that the Ventura County court "determine the construction of the terms of the [Trust instrument] with respect to the interest of Paulette Kimball therein." Renshaw represented appellant in all proceedings pertaining to Paulette's petition.

In July 2012 the Ventura County court stayed the proceedings on Paulette's petition. The court ordered that, except for the dispute concerning title to Mary's California residence, "[j]urisdiction for determination of any and all disputes regarding the assets of the [Trust] and/or the actions of [appellant] as Successor Trustee . . . shall remain in [the] Montana [court] pursuant to the" November 2008 Montana court order.

On March 28, 2013, the Montana court authorized the Ventura County court to "exercise jurisdiction over all of Mary A. Schwarz's assets . . . located in the State of California," including assets of the Trust.

In August 2013 appellant, acting in propria persona, filed the instant action against respondents. The complaint consisted of two causes of action: deceit and conspiracy to

3

commit deceit. Appellant alleged that respondents had "concealed from the Ventura Court" the November 2008 Montana court order that "asserted [Montana's] exclusive and continued jurisdiction over the . . . Trust." It was not until March 10, 2012, that appellant "learned of the legal implications" of the Montana order. She personally informed the Ventura County court of the Montana order, after which the court "abated the trust action until such time as Montana divested itself of jurisdiction." As a result of respondents' "unethical concealment of Montana's exclusive jurisdiction from the Ventura County court," appellant incurred damages "in having to defend herself for four years" in the action commenced by the filing of Paulette's petition in July 2009. "All [respondents] had a duty as officers of the court to disclose material facts to the court which they had reason to believe might affect the court's jurisdiction." Moreover, respondents "intentionally and willfully concealed" the "implications" of the Montana court order from appellant. Respondents "deliberately and willfully intended to deceive the Ventura Court and [appellant] by concealing the Montana jurisdiction." Appellant sought general damages of $750,000 plus exemplary damages.

*Anti-Slapp Statute*

" 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn. 1.) "A SLAPP suit . . . seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

"A defendant opposing a SLAPP claim may bring a special motion to strike any cause of action 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387.) "An anti-SLAPP motion involves a two-step [or two-prong] process." (*Id*., at p. 1387.) First, "[t]he defendant has the burden of

4

making a prima facie showing that one or more causes of action arise from an act in furtherance of the constitutional right of petition or free speech in connection with a public issue. [Citation.] . . . The motion must be denied if the required prima facie showing is not made by the moving defendant. [Citation.]" (*Id*., at p. 1388.)

If the trial court determines that the defendant has made the prima facie showing required in the first step of the anti-SLAPP analysis, it proceeds to the second step, which is to determine " 'whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820.)

"In the second step . . . , 'the plaintiff must show . . . there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment.' [Citation.] 'The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' [Citation.]" (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 376; see also *Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056 ["the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited' "].)

*Standard of Review*

"If the trial court's decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion. [Citation.] . . . [In the first step of the anti-SLAPP analysis,] we independently determine whether the challenged cause of action arose from the defendant's exercise of the constitutional right of petition or free speech . . . ." (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

The second step of the anti-SLAPP analysis is also subject to our independent review. (*Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 109.) "We consider 'the pleadings, and supporting and opposing affidavits upon which the liability or

5

defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

*First Prong of Anti-SLAPP Analysis*

In her reply brief, appellant "concedes that Respondents meet the first prong of [section] 425.16." Appellant explains: "Respondents argue correctly that choosing to remain silent is a component of 'free speech.' [Citation.] Respondents' silence is protected by [section] 425.16; they have the right to choose not to speak and that choice is protected by the anti-SLAPP statute. . . . [T]he cause of action for deceit arose from respondents' 'free speech' by remaining silent on the Montana jurisdiction." We accept appellant's concession.

Respondents satisfied the requirements of the first prong of the anti-SLAPP statute because they made a prima facie showing that their alleged failure to disclose the November 2008 Montana court order to the Ventura County court was protected litigation activity. " 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citation.] 'Any act' [in furtherance of a person's right of petition or free speech] includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation. [Citations.]" (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056.) "[S]ince '[t]he filing of lawsuits is an aspect of the First Amendment right of petition' [citation], a claim based on actions taken in connection with litigation fall[s] 'squarely within the ambit of the anti-SLAPP statute's "arising from" prong. (§ 425.16, subd. (b)(1).)' [Citation.]" (*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759.) "[C]ourts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.]" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.)

It is of no consequence that the litigation activity in question involved an alleged nondisclosure to the court instead of an affirmative act of communication. "It is, of course,

well established that the constitutional right of free speech includes the right not to speak. [Citations.]" (*Kronemyer v. Internet Movie Data Base, Inc.* (2007) 150 Cal.App.4th 941, 947; see also *Glickman v. Wileman Bros. & Elliott, Inc.* (1997) 521 U.S. 457, 481 [117 S.Ct. 2130, 138 L.Ed.2d 585] [" 'the First Amendment guarantees "freedom of speech," a term necessarily comprising the decision of both what to say and what *not* to say' "].) Furthermore, the protected activity of "the prosecution of a civil action" (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056) necessarily entails both the disclosure and nondisclosure of information to the court. An attorney is not required to disclose everything concerning the case.

*Second Prong of Anti-SLAPP Analysis*

"Since [respondents'] motion[s] satisfied the first prong of the anti-SLAPP statute, the burden shifted to [appellant] to demonstrate the probability of prevailing on [her causes of action for deceit and conspiracy to deceive] and thereby establish that the second prong of the anti-SLAPP statute has not been satisfied. [Citation.]" (*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 760.) " '[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.' [Citations.]" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 775.)

Appellant failed to carry her burden of demonstrating a probability of prevailing on the merits. She did not show that respondents had a duty to disclose the Montana court order to the Ventura County court. The order was arguably not material to Paulette's petition. The Montana court declared that it had "exclusive jurisdiction over all of the assets of the incapacitated person Mary Schwarz." Its exclusive jurisdiction arose because it had "exercised its powers to protect Mary's property through the [appointment of a] temporary

7

conservator."  The Montana court did not declare that it had exclusive jurisdiction over the interpretation of the Trust instrument and the administration of the Trust after Mary's death. Under California law, "a conservatorship terminates as a matter of law upon the death of the conservatee.  [Citations.]"  (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1269.)  California had a clear interest in adjudicating the petition because it concerned a trust that was created in California, subject to California law, and administered by a trustee who resided in California.  In addition, the $129,000 at issue in Paulette's petition had been deposited in a California account in Mary's name.

In any event, there was no concealment of the Montana court order, which was attached as an exhibit to Paulette's petition.  The petition put the Ventura County court on notice of the Montana court's ruling that, except for the issue of title to Mary's California residence, Montana "has exclusive jurisdiction over all of the assets of the incapacitated person Mary Schwarz."

Appellant was aware of the Montana order before Paulette filed her petition.  At the hearing on the motions to strike, appellant told the court, "I knew there was a Montana order because it had come to me, but I didn't know that it could possibly stay the California action."  Respondent Jones & Lester had no duty to disclose the possibility of a stay to appellant because they represented her adversary and, therefore, did not owe her a fiduciary duty.[2]  " 'Although material facts are known to one party and not the other, failure to disclose them is ordinarily not actionable fraud unless there is some fiduciary relationship

---

[2] We question whether counsel's concealment of the possibility of a stay can constitute the "concealment of a material fact" element of deceit.  Such concealment is arguably the concealment of a nonactionable opinion.  As a general rule, "an action for fraud must be based on a statement of fact, not opinion, and . . . statements as to future actions by some third party [e.g., the court's granting a stay] are deemed nonactionable opinions. [Citations.]"  (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 295.)  In her opening brief, appellant alleges that respondents "knew that if Judge Reiser [the California trial judge] learned that Montana was actively litigating the same trust before him, he would likely . . . stay the action on which they were collecting fees."  (Bold omitted.)  Because the parties do not discuss the nonactionable opinion versus material fact issue, we do not consider it.

8

giving rise to a duty to disclose.' [Citation.]" (*Nussbaum v. Weeks* (1989) 214 Cal.App.3d 1589, 1599.)

Renshaw, as appellant's counsel, owed her a fiduciary duty. There is no evidence that Renshaw "intentionally concealed or suppressed the [possibility of a stay] with the intent to defraud" appellant. (*Moncada v. West Coast Quartz Corp.*, *supra*, 221 Cal.App.4th at p. 775.) Nor is there any evidence that, as a result of the alleged concealment, appellant sustained damage. On March 28, 2013, the Montana court authorized the Ventura County court to proceed with Paulette's petition insofar as it concerned Mary's and the Trust's assets located in California. Thus, appellant would have been required to defend against the petition and incur legal expenses even if Renshaw had disclosed to appellant the "implications" of the Montana order.[3]

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

---

[3] We need not consider Renshaw's argument that appellant "has no standing to bring this action." We also need not consider Jones & Lester's argument that its acts fall within the "litigation privilege." We note "that acts falling within the anti-SLAPP statute because of their connection with judicial proceedings [do not] inevitably fall within the litigation privilege." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770.)

Rebecca Riley, Judge

Superior Court County of Ventura

_____

Danita Christie, in pro per, Appellant.

Jones & Lester; Mark A Lester and Greg May, for Respondents.

Steven J. Renshaw; Renshaw & Associates, for Respondent.