Filed 10/22/14  Dampf v. BAC Home Loans Servicing CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT P. DAMPF et al., | B248246 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC112565) |
| v. | |
| BAC HOME LOANS SERVICING, L.P. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Neidorf, Judge.  Affirmed in part and reversed in part.

Mirk Law Group, Sasan Mirkarimi and Cyrus Anvaripour for Plaintiffs and Appellants.

Bryan Cave, John W. Amberg and Paul Rogoff for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs Robert P. Dampf and Laura F. Dampf filed this action for intentional and negligent misrepresentation, negligence, unfair competition, wrongful foreclosure, and other claims against defendants Bank of America, N.A. as successor to BAC Home Loans Servicing, LP (BANA), Bank of America Corporation (BAC),[1] and The Bank of New York Mellon (BNY Mellon).[2] The Dampfs appeal from a judgment of dismissal following the trial court's order sustaining the defendants' demurrer without leave to amend. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In 1996 the Dampfs purchased a home in Topanga, California. In March 2007 the Dampfs suffered health problems and personal hardships, which caused them to incur significant unexpected ongoing expenditures. The Dampfs received a letter from H&R Block advertising an opportunity to obtain instant cash by refinancing with a low rate mortgage. They spoke with a representative of H&R Block who convinced them to

---

[1] We refer to BANA and BAC collectively as "the Bank of America defendants," who represent that "[a]s of July 1, 2011, BAC Home Loans Servicing, LP was merged into Bank of America, N.A. and ceased to exist as a separate entity. While BAC Home Loans Servicing, LP is named as a Defendant, Bank of America, N.A. is appearing individually and as successor by merger to BAC Home Loans Servicing, LP."

[2] The Dampfs also sued Mortgage Electronic Registration Systems, Inc. The Dampfs do not challenge the trial court's dismissal of this defendant from this action.

[3] Because a demurrer assumes that the facts alleged in a complaint are true, our summary of the factual background makes the same assumption. (See *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; see *Weinbaum v. Goldfarb, Whitman & Cohen* (1996) 46 Cal.App.4th 1310, 1313, fn. 1 [because "this appeal reaches us after demurrers to the plaintiffs' complaint were sustained without leave to amend," "our statement of facts is taken from the operative pleading and assumes the truth of the facts alleged"].)

refinance the property so that they could take out $100,000 in cash to pay for their outstanding bills.[4]

On April 24, 2007 the Dampfs refinanced the property with two loans, the first one for $650,000 and a second one for $217,000, with each loan placed with an unknown investor and secured by a deed of trust. At closing, the Dampfs were surprised to learn that the closing costs on the loan were $64,000 and that they would only receive $58,590 in cash and not $100,000.

The Dampfs' financial circumstances worsened in 2009. At that time, BANA, which was servicing the loans, informed the Dampfs that they qualified for a loan modification review. In an effort to avoid defaulting on the two loans, the Dampfs in June 2009 submitted a loan modification application and supporting documents to BANA.

In May 2010 the Dampfs learned that the interest rate on the first loan had dramatically increased and included principal payments. The H&R Block representative had repeatedly assured them that the interest rate on the first loan was fixed. The Dampfs hired an attorney to investigate. On June 4, 2010 the Dampfs' attorney wrote to BANA and asked BANA to identify the "true and current" owner of the promissory note for the first loan. BANA did not respond.

The review process for the loan modification continued for 20 months from June 2009 through February 2011. BANA repeatedly asked the Dampfs to submit and resubmit various documents. Each time the Dampfs asked about the status of their loan modification application, BANA representatives stated it was under review, asked for more documents, or both. The Dampfs also learned during this time period that, pursuant to the terms of the deeds of trust, BANA had forced them to pay homeowner's insurance and property taxes through an escrow impound account, even though the Dampfs were current in paying their insurance premiums and taxes. Although the Dampfs ultimately

---

[4]  H&R Block Group Inc., H&R Block, Inc., and related entities are defendants in this action but are not parties to this appeal.

obtained a refund from their insurer, the impound increased their monthly payments even more.  The Dampfs allege that imposing the escrow impound charges "increased [their] monthly payment to the point where with the depletion of their savings and retirement over the . . . 20 months, they ultimately would not be able to afford the monthly payments on the subject loans."

On February 26, 2011 the Dampfs received a letter denying their loan modification application on the ground that they were "current" on the two loans.  Nevertheless, the Dampfs subsequently received six letters during March and April 2011, each one indicating that BANA was still continuing to process their loan modification application.  Meanwhile, between June 2009 and April 2011, the Dampfs "continued to drain whatever funds they had left based upon their 'false' sense of security that their loan modification review was pending," including "their emergency funds held in their retirement plans and savings."  On May 10, 2011 the Dampfs filed this action.

In June 2012 the Dampfs received a "Notice of Default and Election to Sell Under Deed of Trust" on the first loan.  The notice identified the beneficiary as BNY Mellon.  The attached declaration of compliance pursuant to Civil Code section 2923.5 was signed, however, by a default administrator from Specialized Loan Servicing LLC (SLS).  The declaration of compliance falsely stated that SLS or its agent had exercised due diligence to contact the Dampfs to discuss options to avoid foreclosure and had mailed the letter required by Civil Code section 2923.5 on February 22, 2012.  SLS never actually contacted the Dampfs even though SLS had their current telephone numbers and contact information.

The Dampfs did not know that the first loan had been sold to BNY Mellon.  The Dampfs conducted an investigation of the title report and the county property records, reviewed their communications with BANA, BAC, SLS, and others, and analyzed an audit of BNY Mellon's filings with the Securities and Exchange Commission but found no evidence that BNY Mellon had purchased their notes.  The Dampfs did not believe that BNY Mellon had any rights in the notes and deeds of trust.  The Dampfs did not dispute that they owed money on their notes, but they did dispute the amounts the Bank

4

of America defendants claimed they owed, and whether BNY Mellon had any interest in their notes and deeds of trust.

On July 9, 2012 the Dampfs filed their operative first amended complaint, which alleged causes of action against the Bank of America defendants for intentional and negligent misrepresentation, promissory estoppel, negligence, and violation of Title 12 of the United States Code, section 2605 of the federal Real Estate Settlement and Procedures Act (RESPA). The first amended complaint also alleged causes of action against the Bank of America defendants and BNY Mellon for unfair competition and declaratory relief, and against BNY Mellon for "lack of standings to foreclose and wrongful foreclosure." The Bank of America defendants and BNY Mellon demurred.

The trial court sustained the demurrer without leave to amend. The court ruled that the Dampfs had not pleaded their fraud and negligent misrepresentation causes of action with sufficient particularity. The court also stated: "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower. It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." "A lender owes no duty of care to the borrowers in approving their loan. A lender is under no duty to determine the borrower's ability to repay the loan. The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." The court also concluded that "there is also nothing to show that some vague oral representation regarding the 'possibility' of a loan modification down the road is actionable fraud. The only allegation . . . is that [the Bank of America defendants] represented that [the Dampfs'] loan modification was under review." Finally, the court stated that the Dampfs had failed to plead actionable representations regarding past or existing material facts as opposed to "events that were to occur in the future – i.e., that [the Bank of America defendants] 'would' provide [the Dampfs] with a good faith review for a loan modification."

With respect to the cause of action for promissory estoppel, the court found that "the only alleged promise was for a good faith loan modification review," and "[t]here is

nothing to show that this is sufficiently clear or unambiguous . . . to enforce it. [C]ontinuing to make monthly mortgage payments already contractually owed does not constitute detrimental reliance. Performance of [a] preexisting contractual obligation, no matter how personally difficult it may have been because of [the Dampfs'] deteriorating financial condition, is simply insufficient to constitute detrimental reliance."

With respect to the negligence cause of action, the court stated that a lender does not owe a borrower a duty of care when the lender's "involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." The court found that the Dampfs had alleged only that the Bank of America defendants "agreed to engage in a good faith loan modification review" and did not agree to make a modification, and it concluded the Bank of America defendants did not exceed the conventional role of a lender of money.

With respect to the cause of action for unfair competition, the trial court stated that "since there is no viable underlying cause of action against [the Bank of America defendants], there is no basis for the court to find that they engaged in unlawful, unfair or fraudulent business practices" of the types prohibited by Business and Professions Code section 17200. Finally, the trial court ruled that the Dampfs' cause of action for wrongful foreclosure failed "as a matter of law because [the Dampfs] . . . failed to properly allege tender" and because a recorded assignment of the deed of trust "is not necessary for a party to be a valid beneficiary to conduct foreclosure proceedings." The court found that "there is no authority providing for a homeowner's court action seeking a presale determination as to whether the party initiating foreclosure was authorized to do so." The court also ruled that "the declaratory relief cause of action is not necessary, as all identified disputes would be resolved in other substantive causes of action, if properly and timely alleged."[5]

---

[5]    The Dampfs did not oppose the Bank of America defendants' demurrer to the RESPA cause of action.

The trial court entered a judgment of dismissal in favor of the Bank of America defendants and BNY Mellon. The Dampfs timely appealed.

**DISCUSSION**

A. *Standard of Review*

"We review an order sustaining a demurrer de novo to determine whether the complaint states facts sufficient to constitute a cause of action. [Citations.] We construe the complaint 'liberally . . . with a view to substantial justice between the parties' [citation] . . . ." (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 303-304.) "On appeal after the superior court has sustained a demurrer, we assume as true all facts alleged in the complaint." (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 996.) "'If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]' [Citation.]" (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1470-1471.)

B. *Intentional and Negligent Misrepresentation*

"The elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. [Citation.] Fraud allegations '"involve a serious attack on character"' and therefore are pleaded with specificity. [Citation.] General and conclusory allegations are insufficient. The particularity requirement demands that a plaintiff plead facts which ""'show how, when, where, to whom, and by what means the representations were tendered.'"" [Citation.]" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469; see *Conroy v. Regents of University of*

7

*California* (2009) 45 Cal.4th 1244, 1255; *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 605-606.) "[A] claim for negligent misrepresentation requires the plaintiff to prove each of the following: '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' [Citation.]" (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 661.) "'The tort of negligent misrepresentation, a species of the tort of deceit [citation], does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.' [Citation.]" (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 892.) Like fraud, negligent misrepresentation must be pleaded with particularity. (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 185, fn. 14.)

### 1. *Misrepresentations*

In their causes of action for intentional and negligent misrepresentation, the Dampfs allege BANA "implemented a fraudulent scheme wherein they intentionally misrepresented that [the Dampfs] would be reviewed for a loan modification." The Dampfs allege that "neither BAC nor [Bank of America] ever reviewed [the Dampfs' application] for a modification" and that "BAC never intended to offer [the Dampfs] a modification of their loan, rather it was [their] intention to get [the Dampfs] to continue to make their loan payments with the false sense of hope that a modification was forthcoming." The Dampfs claim that the Bank of America defendants "delayed the so-called 'review' by various methods, including insisting that [the Dampfs] submit documents that they had submitted multiple times under the notion that they were either lost or not submitted and have them submitted for multiple types of modifications when they knew that [the Dampfs] would never be approved." The Dampfs allege that various bank representatives repeatedly asked for documentation the bank already had, lost documents the Dampfs had repeatedly sent them, promised the bank would make

8

decisions on the Dampfs' application by multiple deadlines that came and went, and passed around the Dampfs' application file among six different loan negotiators, "all the while" never conducting "a reasonable review, as repeatedly promise[d] for almost two years, to drain whatever funds [the Dampfs] had before causing them to ultimately default and face foreclosure." And when the Bank of America defendants finally denied the Dampfs' loan modification application, they did so for a reason that had nothing to do with any documentation they requested from the Dampfs or that required any investigation or analysis, and for a reason they knew all along without processing anything: the Dampfs were current on their loans. The Bank of America defendants "had plenty of opportunities to tell [the Dampfs] that they could not get a modification because they were 'current' on their loan but did not do so in an effort to drag out the process as long as possible so they could profit as much as possible."

The trial court found that the Dampfs had "failed to allege sufficient facts to satisfy the strict pleading requirements for fraud" because "[t]here are no allegations as to who made the misrepresentations, when, in what manner and/or in what capacity to bind the" Bank of America defendants. That may be true for some of the Dampfs' allegations in their chronology of 43 contacts they had with BANA representatives during the 20-month period the Bank of America defendants represented they were reviewing the Dampfs' application, but it is not true for all of them. For example, among the Dampfs' many allegations of representations by BAC representatives, all of which the Dampfs claim were false because the Bank of America defendants were not in fact reviewing the Dampfs' application, are the following:

| Statement | When | To Whom | Means | Name and Authority |
|---|---|---|---|---|
| File in active review | 04/01/10 | Mrs. Dampf | | Bridget Carter, loan negotiator |
| Loan modification in "final review" | 04/15/10 | Mrs. Dampf | | Carter |
| All new loan documents needed for review | 07/8/10 | Mrs. Dampf | Telephone | Catherine Chapman, loan negotiator |

9

| | | | | |
|---|---|---|---|---|
| Loan documents lost or not received | 08/01/10 | Mrs. Dampf | Telephone | Chapman |
| Judy is new loan negotiator | 09/ /10 | Dampfs | | Chapman |
| BAC needs more documents | 10/ /10 | | Telephone | "Unidentified BAC representative" when Dampfs could not reach Judy at 800-404-0078 x3627 |
| BAC needs more documents | 12/07/10 | Dampfs | Telephone | Manuel Duran, new loan negotiator |
| BAC needs more documents | 12/15/10 | Dampfs | FedEx letter | |
| BAC will "have a decision within 30 days and you will be contacted in 30 days" | 12/18/10 | Dampfs | FedEx letter | |
| "Underwriting is completed and you will hear in a few days" | 01/20/11 | Mrs. Dampf | Telephone | Loan Representative Clarissa |
| File still under review | 02/03/11 | Dampfs | Telephone | Geneva Cross, new loan negotiator |
| "Thank you for applying for a loan modification, we will contact you if we need anything." | 02/09/11 | Dampfs | FedEx letter | |
| File still under review | 02/11/11 | Mrs. Dampf | Telephone | Clarissa |
| File still under review | 02/17/11 | Dampfs | Telephone | Sue, new loan negotiator, 800-430-1431 x 14517 |
| Loan modification application denied because loan current | 02/26/11 | Dampfs | Letter | |
| Resolution of modification delayed due to BAC's delayed processing times | 03/14/11 | Dampfs | | |

| | | | | |
|---|---|---|---|---|
| No change in status of loan modification application | 03/29/11 | Dampfs | Letter | |
| Loan modification delayed due to additional processing time needed | 03/30/11 | Dampfs | Letter | |
| Loan modification delayed due to additional processing time needed | 04/15/11 | Dampfs | Letter | |
| Loan modification delayed due to additional processing time needed | 04/21/11 | Dampfs | Letter | |
| Loan modification delayed due to additional processing time needed | 04/25/11 | Dampfs | Letter | |

While the Dampfs' fraud and negligent misrepresentation allegations may not have been flawless models of complete particularity (there are a few holes in the chart), they were particular enough. The Dampfs allege a number of specific misrepresentations identified by content, speaker, authority, recipient, and manner of communication. Any additional particularity, if truly needed, could have been added easily by a minor amendment or discovered with a basic interrogatory. Moreover, to the extent the Bank of America defendants needed the last names of loan negotiators Clarissa and Sue, or any other information about their employees, they have more information than the Dampfs do, and therefore more particularity is not required. (See *Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1469 ["[l]ess specificity in pleading fraud is required 'when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy"'"]; *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 ["requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy'"].) As in *West v. JPMorgan Chase Bank, N.A.*

11

(2013) 214 Cal.App.4th 780, the Dampfs did not need to plead the name, title, and authority of each of the authors of letters they received from the bank because "that information . . . was uniquely with [the bank's] knowledge" (*id*. at p. 793), nor did the Dampfs have to identify the last names of Clarissa and Sue because "[t]he identification of the [bank] employees who spoke with [Mrs. Dampf] on those dates is or should be within [the bank's] knowledge" (*id.* at p. 794). The Dampfs alleged their intentional and negligent misrepresentation causes of action with sufficient particularity.

###### 2. *Reliance*

"Reliance is an essential element of a fraud cause of action." (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1110.) The same is true for negligent misrepresentation. (*Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243; see *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. 4 ["justifiable reliance and actual damages are also essential elements of negligent misrepresentation"].) "'Actual reliance occurs when a misrepresentation is "'an immediate cause of [a plaintiff's] conduct, which alters his legal relations,'" and when, absent such representation, "'he would not, in all reasonable probability, have entered into the contract or other transaction.'"'" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1256.) "'"Besides actual reliance, [a] plaintiff must also show 'justifiable' reliance, i.e., circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation." [Citation.] The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience. [Citation.]'" (*Public Employees' Retirement System v. Moody's Investors Service, Inc.*, *supra*, 226 Cal.App.4th at p. 672.)

The Dampfs allege, among other things, that they relied on BANA's "promises that [BANA] would provide them with a good faith loan modification review" "by continuing to dutifully make the monthly payments on the loan instead of looking into other options to avoid the imminent foreclosure," such as seeking alternative financing, selling their home, or filing for bankruptcy protection. The Dampfs allege that, even

12

though there was "alternative financing available to [them], [they] chose to forbear seeking such alternative financing because of [the Bank of America defendants'] representations that the Loan Modification was proceeding in a satisfactory manner and was actually being reviewed," and that, had they "not been misled by [the Bank of America defendants], they would have applied for alternative financing and, would have either cured the arrearages owed to [the Bank of America defendants] or would have paid the loan off in full." The Dampfs also allege that, had they "known that BAC never intended to conduct the promised review, they would not have spent their remaining emergency funds and wasted their time continuously re-submitting financial documents over a 20 month period, exhaust[ed] their remaining assets, and forego[ne] other alternatives such as pursuing another re-finance, sale, and/or other available remedies."

Had the Dampfs alleged no more than that they continued to make their monthly payments, they would not have satisfied the element of justifiable reliance. "Continuing to make payments on the loan . . . does not constitute detrimental reliance because [the borrower] already had the obligation to make those payments." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 79.) The Dampfs, however, alleged more. They alleged that, in reliance on the Bank of America defendants' misrepresentations, they did not pursue alternative courses of action such as other refinancing, sale, or bankruptcy. These allegations satisfy the element of justifiable reliance. (See *Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1411 [borrowers sufficiently alleged reliance on false promise by alleging that they "refrain[ed] from taking other measures to save their home"]; *Rufini v. CitiMortgage, Inc.*, *supra*, 227 Cal.App.4th at p. 308 [borrower sufficiently alleged reliance on a misrepresentation by alleging "that in reasonable reliance on it he spent hundreds of hours in loan modification negotiations and lost the opportunity to pursue other ways to avoid foreclosure"]; *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at pp. 804, 805 [borrower's allegation that "'she would have pursued other options, including possibly selling her home, retaining counsel earlier, and/or finding a co-signer to save her home'" was sufficient to allege "the requirement of detrimental reliance"]; see

also *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 951 [allegation "that the delay in processing [loan modification applications] deprived [the borrowers] of the opportunity to seek relief elsewhere" stated breach of duty of care by lender]; see generally *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 174 ["[f]orbearance—the decision not to exercise a right or power—is sufficient . . . to fulfill the element of reliance necessary to sustain a cause of action for fraud or negligent misrepresentation"].)

Moreover, "'[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.' [Citations.]" (*Alliance Mortgage Co. v. Rothwell*, *supra*, 10 Cal.4th at p. 1239; see *Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 893 ["[w]hether [the borrower's] reliance was justified in the circumstances is a factual question for a jury, not one for summary judgment"].) This is not one of those rare cases where justifiable reliance can be decided as a matter of law on the pleadings. The Dampfs' allegations of actual and justifiable reliance were sufficient.

### 3. *Injury*

To state claims for intentional and negligent misrepresentation, the plaintiff must "plead the injury or damage suffered and its causal connection to the plaintiff's reliance on the defendant's misrepresentations." (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1239.) "'"Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown."' [Citations.]" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 776.)

The Bank of America defendants argue that the Dampfs did not sufficiently allege damages because they were contractually obligated to make the monthly loan payments they continued to make during the loan modification application review period and that they were reimbursed for any wrongfully impounded taxes. As noted, however, the Dampfs' damages allegations are not so limited and include lost opportunities to avoid

14

foreclosure by investigating and pursuing other options. (See *Rufini v. CitiMortgage, Inc.*, *supra*, 227 Cal.App.4th at p. 309 ["forbearance from pursuing other sources of financing in reliance on [lender's] representations" were "sufficient allegations of damage to withstand the demurrer to [negligent misrepresentation] cause of action"]; cf. *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928 [rejecting lender's argument "that plaintiffs cannot allege damages" for breach of contract and promissory estoppel claims "because all plaintiffs did was make monthly mortgage payments they were already obligated to make"].)

Moreover, the Dampfs' reliance on the Bank of America defendants' misrepresentations caused the Dampfs to suffer an injury in addition to the lost opportunities. The Dampfs allege that the Bank of America defendants' misrepresentations induced them to continue to participate in a loan modification process the Bank of America defendants had no intention of completing and in fact never undertook. The Dampfs allege that the Bank of America defendants' "true intent was to drag out the loan modification process for a long enough period and then ultimately to deny the loan modification," for the purpose of draining the Dampfs' "savings and retirement to a point which [the Dampfs] would default and be subject to foreclosure, as BAC would maximize its financial profit by doing so." One way in which the Bank of America defendants were able to maximize this "financial profit" was obtain money from the Dampfs that they might not have obtained. While the Bank of America defendants' financial recovery through foreclosure may have been limited by anti-deficiency statutes to the value of the property at the foreclosure sale,[6] the more than 20-month delay in

---

**6**      (See Code Civ. Proc., § 580d; *Dreyfuss v. Union Bank of California* (2000) 24 Cal.4th 400, 411 [in nonjudicial foreclosure, "the borrower is relieved from any *personal liability* on the debt," and "in the event of a default, the borrower stands to lose only such property as he or she specifically chose to place at risk, leaving the creditor to carry the burden of any additional loss in value if the amount of the debt exceeds the value of the assets pledged as security for the loan"]; *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 631 ["antideficiency statutes 'bar[ ] a deficiency judgment following nonjudicial foreclosure of real property . . . or following foreclosure of a purchase money

15

informing the Dampfs about the status of their loan modification application allowed the bank to continue receiving money from the Dampfs' retirement and savings that the bank would otherwise not have received.

In addition, the Dampfs allege that the Bank of America defendants "made improper payments into the escrow account" that the Bank of America defendants set up for unpaid taxes and insurance, "which resulted in them further increasing [the Dampfs'] monthly mortgage payments, which ultimately achieved their goal of causing [the Dampfs] to default." Even if the Dampfs eventually received reimbursement from their insurer for the double payment of insurance premiums, the Dampfs suffered economic damage in the form of an increase in the Dampfs' monthly payments and corresponding increase in the probability of default and the initiation of foreclosure proceedings. (See *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 69 ["[i]t is foreseeable that a borrower might be harmed by an inaccurate or untimely communication about a foreclosure sale or about the status of a loan modification application, and the connection between the misrepresentation and the injury suffered could be very close"]; accord, *Alvarez v. BAC Home Loans Servicing, L.P.*, *supra*, 228 Cal.App.4th at pp. 946-947.) The Dampfs also suffered the loss of the use of the money taken for property taxes until they received their refund for the double payment, if they ever did.[7]

---

deed of trust on a residence'"]; *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507, fn. 2 [deeds of trust are subject to "antideficiency limitations"]; *Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 611 ["[e]ven if the security is insufficient, the antideficiency statutes . . . may limit or bar a judgment against the debtor for a deficiency"].)

[7]     The Bank of America defendants argue that the property tax impound did not injure the Dampfs because the deeds of trust "expressly authorized the impound account." True enough. But the Bank of America defendants do not argue that the deeds of trust authorized them to impose an impound account for property taxes that were not in fact delinquent because the Dampfs had paid them.

16

This is not a case where the true cause of the borrowers' injury was an inability to make the payments on promissory notes. According to the Dampfs' allegations, which we accept as true, the Bank of America defendants at one point denied the Dampfs' application for a loan modification because the Dampfs *were* able to make their payments, and were current, on the notes. The Dampfs' allegations satisfied the injury element of their claims for fraudulent and negligent misrepresentation.

C.    *Promissory Estoppel*

"Promissory estoppel is an equitable doctrine that allows enforcement of a promise that would otherwise be unenforceable based on lack of consideration." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1063.) "'In California, under the doctrine of promissory estoppel, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . .""' (*Moncada v. West Coast Quartz Corp.*, *supra*, 221 Cal.App.4th at p. 779.) "'"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'"' [Citation.]" (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225; see *Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 897.)

The Dampfs allege that the Bank of America defendants, "through the actions of their employee[s,] made a series of promises between June 2009 and February 2011, to conduct a good faith review of [the Dampfs'] loans for a Loan Modification in an effort to assist [the Dampfs] from defaulting on their loans." In reliance on these promises, the Dampfs continued to make the monthly payments on the two loans until they had "depleted their emergency funds in the form of savings and even retirement plans and could no longer keep their loan current in or about August 2011." The Dampfs further allege that, "in an effort to drain [their] funds faster and all but guarantee that [the

17

Dampfs] could eventually not afford the loan, [BANA] fraudulently created an impound account and paid [the Dampfs'] taxes and insurance so that they could add these on top of [the Dampfs'] already astronomical monthly payments . . . ."

The trial court sustained the demurrer to the Dampfs' promissory estoppel cause of action because the court found that "the only alleged promise was for a good faith loan modification review" and that such a promise was not "sufficiently clear or unambiguous in order to enforce it." The court also ruled that "continuing to make monthly mortgage payments already contractually owed does not constitute detrimental reliance." As noted, however, the former is not what the Dampfs allege was the promise, and the latter is not what the Dampfs allege was their detriment. The Dampfs allege that the Bank of America defendants promised to review and that they were reviewing the Dampfs' loan modification application (but in truth did not and were not), and that in reliance on these promises the Dampfs did not pursue opportunities to take other actions to improve their financial situation.

The Bank of America defendants concede the Dampfs allege "that BANA, 'through the actions of their employee[s] made a series of promises between June 2009 and February 2011, to conduct a good faith review' of the Loans for modification," but assert that the Dampfs made the allegation "in conclusory fashion" and that "there are no facts pled to support this assertion." As noted, however, the Dampfs allege plenty of facts to support their assertion, including statements (identified by date, speaker or writer, authority, and recipient) that the Dampfs' loan modification application was under review, was in active review, required additional documentation, would be completed within 30 days, and was delayed because BANA needed additional time to process it, all of which statements the Dampfs allege were false. It is hard to imagine what additional facts the Dampfs, or any reasonable person in the Dampfs' position, could have alleged to support their assertion (other than perhaps the last names of Clarissa and Sue, assuming they disclosed their last names during their telephone calls).

The Bank of America defendants also argue that the Dampfs did not sufficiently allege reasonable and forseeable reliance because "it was unreasonable for [the Dampfs]

18

not to seek alternative financing arrangements in reliance on BANA's offer merely to *consider* them for a loan modification, by contacting the bank, submitting financial documents, and foregoing the opportunities to refinance or file for bankruptcy."  The Bank of America defendants add that their "promise to consider [the Dampfs] for a possible loan modification did not ask them to take any action or to refrain from any action, much less that they forego alternatives such as other financing or bankruptcy." These may be good arguments for why the Dampfs' reliance on BANA's allegedly false statements was not reasonable, and they may convince the trier of fact, but they will not support an order sustaining a demurrer without leave to amend.  (See *Bushell v. JPMorgan Chase Bank, N.A.*, *supra*, 220 Cal.App.4th at p. 930 ["plaintiffs . . . adequately alleged detrimental reliance to sustain a promissory estoppel cause of action" by alleging, among things, that they relied "by repeatedly contacting [defendant], by repeatedly preparing documents at [defendant's] request, [and] by discontinuing efforts to pursue . . . other means of avoiding foreclosure"].)  Indeed, as noted, the issue of whether the Dampfs' reliance was reasonable is a question of fact that cannot be decided on demurrer. (See *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at pp. 804, 805 [allegation that if the plaintiff "had known [defendant] would not offer her a permanent loan modification, 'she would have pursued other options'" satisfied "the requirement of detrimental reliance" to state a claim for promissory estoppel]; *Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 897 [allegation that bank representative made "frequent assurances . . . that a modification was forthcoming induced [the plaintiff] to rely" created "a triable issue of fact whether [the bank] has potential liability for its own conduct under a theory of promissory estoppel"].)

Finally, the Bank of America defendants argue that the Dampfs did not allege "facts showing that their reliance on BANA's promise caused their injury or loss."  The Bank of America defendants argue that the Dampfs have "not identif[ied] any actual cost or pecuniary loss that they sustained as a result of applying for a loan modification in reliance on BANA's promise," and that "the property tax impound account established by BANA" did not cause them a "cognizable injury" because the deeds of trust "expressly

authorized the impound account" and the Dampfs "received a refund of the alleged property tax overpayment." As discussed, the Dampfs sufficiently allege the injury and loss they incurred in reliance on the Bank of America defendants' promises, and the fact that the Dampfs ultimately received a refund did not eliminate the injury caused by the improper tax and insurance charges. (See *Bushell v. JPMorgan Chase Bank, N.A.*, *supra*, 220 Cal.App.4th at p. 928 ["plaintiffs . . . adequately alleged damages" by alleging "they were damaged by the considerable time they spent repeatedly contacting [defendant] and repeatedly preparing documents at [defendant's] request[,] by discontinuing efforts to pursue a refinance from other financial institutions or to pursue other means of avoiding foreclosure (such as bankruptcy restructuring, or selling or renting their home)," and "by having their credit reports further damaged"].)

D. *Wrongful Foreclosure*

The Dampfs allege that BNY Mellon and the other defendants initiating the foreclosure did not have "the right to declare default, cause notices of default to be issued or recorded (although said notices were never properly issued or recorded), or foreclose on [the Dampfs'] interest in" their property because those defendants "were not the note holder or a beneficiary at any time with regard to [the Dampfs'] loan." Specifically, the Dampfs allege that BNY Mellon had no interest in the deeds of trust, that the notice of default[8] was void because BNY Mellon and the other defendants involved in the foreclosure did not receive assignments of the deeds of trust and because the assignments were not recorded. The Dampfs also allege that BNY Mellon did not acquire any interest

---

[8] The notice of default states: "The beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2007-8 as the current beneficiary or its agent . . . ." The notice of default identifies the issuer as "NBS Default Services, LLC, as Trustee or Agent for the Beneficiary." The notice states that the contact for information is "Specialized Loan Servicing, LLC c/o NBS Default Services, LLC."

20

in the notes because the parties involved in the transfer did not comply with the terms of the Pool and Servicing Agreement (PSA), which require the notes to "be properly endorsed, transferred, and deposited with the Securitized Trust (or its custodian) on or before the 'closing date' indicated on the Prospectus." Finally, the Dampfs allege because the defendants involved in the foreclosure did not contact them to discuss options to foreclosure, as required by Civil Code section 2923.5, the statement in the declaration of compliance that the loan servicer exercised due diligence to contact them was "fraudulently fabricated and executed by . . . SLS, and . . . NBS acting in capacity as SLS' agent."

To "maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." (*Chavez v. Indymac Mortgage Services*, *supra*, 219 Cal.App.4th at p. 1061.) "[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests," and "[p]rejudice is not presumed from 'mere irregularities' in the process." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.)

The Dampfs do not allege that the Bank of America defendants have foreclosed on their property. They allege only that the foreclosure on their property "was invalidly commenced in June 2012 when the Notice of Default & Election to Sell was issued" because none of the defendants has "the right to foreclose on [their] home, and therefore any foreclosure upon the Subject Property will be invalid." A borrower, however, may not file an action seeking a presale determination whether the party initiating the foreclosure has the authority to do so. (See *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154.) As the court stated in *Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th 497, "[a]fter our own examination of the nonjudicial foreclosure statutes [Civil Code section 2924 et seq.], we agree with the *Gomes* court that

21

the provisions do not contain express authority for such a preemptive action. Also, even if the statutes are interpreted broadly, it cannot be said the provisions imply the authority for such a preemptive action exists, because doing so would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." (*Id.* at p. 513; see *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46 ["statutory scheme . . . does not provide for a preemptive suit challenging standing" to foreclose]; *Gomes*, *supra*, at p. 1154 ["'[b]ecause of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute'"].) As BNY Mellon correctly argues, "[a] preemptive suit like the present one impermissibly 'seeks to create "the additional requirement" that the foreclosing entity must "demonstrate in court that it is authorized to initiate a foreclosure["] before the foreclosure can proceed['] and thereby frustrates the purposes of the summary procedure created by the [L]egislature." (See *Kan v. Guild Mortgage Company* (2014) ___ Cal.App.4th ___, ___ [2014 WL 5192710, p. 4].)

Moreover, the Dampfs do not have standing to challenge BNY Mellon's authority to foreclose on the property by alleging defects in, or the failure to record, the assignments of the deeds of trust to BNY Mellon. "[W]here a deed of trust is involved, the trustee may initiate foreclosure irrespective of whether an assignment of the beneficial interest is recorded." (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 336.) Civil Code section 2932.5, which requires recording of an assignment of a mortgage, does not apply to deeds of trust. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 123; see *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1509 [Civil Code "section 2923.5 does not apply to trust deeds, in which the power of sale is granted to a third party, the trustee"; the statute "applies to mortgages, in which the mortgagor or borrower has granted a power of sale to the mortgagee or lender"]; *Haynes*, *supra*, at p. 333 [Civil Code "section 2923.5 applies only to mortgages and not to deeds of trust"].) Nor can the Dampfs state a claim for wrongful foreclosure based on the allegation that BNY Mellon did not acquire any

interest in the deeds of trust because the promissory notes and deeds of trust were never properly transferred to the securitized trust in accordance with the requirements of the PSA. Because the Dampfs do not allege they are parties to the PSA, they do not have standing to challenge the securitization of their loans. (See *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020, 1031-1033; *Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 515.)[9]

Finally, the Dampfs allege that BNY Mellon and the other defendants involved in initiating the foreclosure proceedings did not comply with Civil Code section 2923.5, which requires that the mortgage servicer either contact, or make a diligent effort to contact, the borrower before the "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" records the notice of default. (*Id.*, subd. (a)(1), (2).) Civil Code section 2923.5, subdivision (b), requires notices of default to include a declaration that the mortgagee, beneficiary, or authorized agent "has contacted the borrower, has tried

------

[9]     In support of their contention that they have standing to challenge BNY Mellon's authority to foreclose, the Dampfs rely on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, which held that "borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement." (*Id.* at p. 1083.) State and federal courts in California, however, have robustly criticized the *Glaski* decision. (See, e.g., *Jenkins v. JPMorgan Chase Bank N.A.*, *supra*, 216 Cal.App.4th at p. 515 ["[a]s an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [the borrower] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions"].) In *Mendoza v. JPMorgan Chase Bank, N.A.*, *supra*, 228 Cal.App.4th 1020 the court expressly declined to follow *Glaski*. (See *id.* at p. 1034 ["[w]e can find no state or federal cases to support the *Glaski* analysis and will follow the federal lead in rejecting this minority holding"].) We note that the Supreme Court has granted review in *Yvanova v. New Century Mortgage Corp.* (review granted 8/27/14, S218973) to decide the following question: "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?" Pending the Supreme Court's decision in *Yvanova*, we agree with *Jenkins* and *Mendoza* that borrowers lack standing to challenge the validity of assignments and pooling agreements to which they are not parties.

23

with due diligence to contact the borrower as required by this section, or that no contact was required pursuant . . . to subdivision (c) of Section 2920.5." The only remedy for an alleged violation of Civil Code section 2923.5, however, is postponement of the foreclosure sale so that the lender, trustee, beneficiary, or authorized agent can comply with the statute. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214.) Here, because the foreclosure sale has not occurred, postponement of the sale under Civil Code section 2923.5 is unnecessary. Thus, the Dampfs failed to state a cause of action for wrongful foreclosure.

### E.     *Declaratory Relief*

In their cause of action for declaratory relief, the Dampfs seek "appropriate orders stating that none of the [defendants] have any right or interest in [their] Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect [their] mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever." The Dampfs ask the court to "make a determination as to whether Defendants' claims against [the Dampfs] are enforceable and whether they are secured or unsecured by any right, title, or interest in [the Dampfs'] Property."

"Declaratory relief is available to '[a]ny person interested under a written instrument . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . in cases of actual controversy relating to the legal rights and duties of the respective parties . . . .' [Citations.] [¶] Once the court determines an 'actual controversy' exists, the court has discretion under Code of Civil Procedure section 1061 to refuse to make a declaration of rights and duties 'including a determination of any question of construction or validity arising under a written instrument or contract, "where its declaration or determination is not necessary or proper at the time under all the circumstances."' [Citation.] The decision to refuse to entertain a complaint for declaratory relief is reviewed on appeal for abuse of discretion. [Citation.]" (*Graham v. Bank of America, N.A.*, *supra*, 226 Cal.App.4th at p. 615; see *Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 909 ["'[t]o qualify for

24

declaratory relief, [a party] would have to demonstrate its action presented two essential elements: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations""'"].)

As noted, the Dampfs have not stated claims regarding any of the defendants' interests in the notes, deeds of trust, and the property, nor have the Dampfs stated claims challenging the BNY Mellon's right to bring a foreclosure action against them. The Dampfs are not entitled in this action to a declaration that the defendants do not have the right to enforce the notes and foreclose on the property. The trial court properly exercised its discretion in declining to grant the Dampfs the declaratory relief they sought. (See *Robinson v. Countrywide Home Loans, Inc.*, *supra*, 199 Cal.App.4th at pp. 45, 46 ["plaintiffs' claims for damages for wrongful initiation of foreclosure and for declaratory relief based on" allegation that "the entity which initiated foreclosure proceedings had no legal authority to do so" did "not state a cause of action"].)

F.    *Violation of Unfair Competition Law (UCL) (Business & Professions Code Section 17200)*

"The UCL permits civil recovery for 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . .' (Bus. & Prof. Code, § 17200.)" (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 805.) The UCL "is meant to forbid not only anti-competitive practices but also """"the right of the *public* to protection from fraud and deceit."""" [Citation.]" (*Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 907.) """Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. . . ."' [Citation.]" (*West*, *supra*, at p. 805.)

The Dampfs argue that they stated a UCL claim for unfair and fraudulent business practices based on the following allegations:

(1)    The Bank of America defendants represented that they were reviewing the Dampfs' application for a loan modification, when in fact they were not, but instead were

engaging in "a complex and malicious scheme to drain [the Dampfs] of their money while inevitably foreclosing on the Subject Property";

(2)     The Bank of America defendants created an unnecessary impound account for property taxes and insurance when in fact the Dampfs were paying their property taxes and insurance premiums, in order to increase the Dampfs' monthly payments, the likelihood the Dampfs would default, and the potential for foreclosure;

(3)     BNY Mellon issued a notice of default containing improper signatures and naming an improper beneficiary; and

(4)     BNY Mellon issued a fraudulent declaration of compliance in connection with the notice of default that falsely stated they had contacted the Dampfs to discuss options to foreclosure.

"Liberally construed" (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 806), allegations (1) and (2) state a claim against the Bank of America defendants under the "unfair" prong of the UCL. A practice may be unfair even if it is not unlawful. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143; accord, *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 486.) "In consumer cases arising under the UCL, a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1376; see *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403.)[10]

The Dampfs allege a substantial injury in the form of the loss of opportunities to sell or refinance their home, payments from their personal and retirement savings that

---

[10]     Although in consumer cases "[t]here is a split of authority on what constitutes an 'unfair' practice" under the UCL (*Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 907), the divisions in this district have "consistently followed the definition enunciated in *Camacho* . . . ." (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1376, fn. 14.)

they would not have made had they been able to pursue other financing or options, and unjustified charges for taxes and insurance.  Although there is no allegation of the amount of these injuries, "[a]t the pleading stage, we cannot presume that these alleged harms are not 'substantial' . . . ." (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1376.)  Similarly, the Dampfs do not allege any "countervailing benefits" of misrepresenting the status of a loan modification application or of wrongfully creating an unnecessary impound account for taxes and insurance, and, even if the Bank of America defendants had identified any such benefits, the issue would not be amendable to resolution on demurrer.  (*Ibid.*)  Finally, the Dampfs could not reasonably have avoided the injury because (a) as noted, their reliance on the misrepresentations by the Bank of America defendants regarding the status of loan modification application was reasonable, and (b) the Bank of America defendants imposed the impound account despite the (alleged) fact that the Dampfs were current on their taxes and insurance payments.

Allegations in categories (1) and (2) also state a claim against the Bank of America defendants under the "fraudulent" prong of the UCL.  "A business practice is 'fraudulent' within the meaning of [Business and Professions Code] section 17200 if it is 'likely to deceive the public.  [Citations.]  It may be based on representations to the public which are untrue, and "'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . .  A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL.  [Citations.]  The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer.  [Citation.]' . . . [Citation.]" (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1380.)  "A 'fraudulent' activity includes any act or practice likely to deceive the public, even if no one is actually deceived.  [Citation.]" (*Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 907; see *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 772 ["'[u]nlike common law fraud, a Business and Professions Code section 17200 violation

27

can be shown even without allegations of actual deception, reasonable reliance and damage'"].)

The Dampfs allege that the Bank of America defendants fraudulently misrepresented the existence and status of their review of the Dampfs' loan modification application. Such alleged misstatements of fact support a UCL claim under the "fraudulent" prong. (See *Rufini v. CitiMortgage, Inc.*, *supra*, 227 Cal.App.4th at p. 310 [allegation that bank "pretended to engage in loan modification efforts while actually intending to foreclose" stated UCL claim for fraudulent and unfair practice]; *Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 907 [misstatements of fact by bank employee regarding prospects of loan modification application satisfied "fraudulent" prong of the UCL].) Moreover, "[g]enerally, the question of '[w]hether a practice is deceptive or fraudulent "cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer." [Citation.] Rather, the determination is one question of fact, requiring consideration and weighing of evidence from both sides before it can be resolved.' [Citation.] '"[U]nless we can say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [the defendant's alleged conduct], we must hold that [plaintiffs] stated a cause of action."' [Citation.]" (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1380; see *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226-227 ["[t]he question whether consumers are likely to be deceived is a question of fact that can be decided on a demurrer only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not likely to be deceived"].) The Dampfs' UCL claim under the "fraudulent" prong cannot be resolved on demurrer.

The Bank of America defendants argue that the Dampfs did not allege that they "lost money or property as a result of any action by the [Bank of America defendants] that is alleged to violate [Business and Professions Code s]ection 17200." This is a standing argument. (See *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 81 ["[t]o have standing to sue under the UCL, a private plaintiff must

28

allege he or she 'has suffered injury in fact and has lost money or property'"].)  Among the "'innumerable ways'" a plaintiff can satisfy the economic injury requirement of the UCL are "(1) the plaintiff surrendering more or acquiring less in a transaction than the plaintiff otherwise would have; (2) the plaintiff suffering the diminishment of a present or future property interest; (3) the plaintiff being deprived of money or property to which the plaintiff has a cognizable claim; or (4) the plaintiff being required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Jenkins v. JP Morgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 522 ; accord, *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 561.)  An allegation that the bank has initiated nonjudicial foreclosure proceedings, as the Dampfs allege, "satisfies the economic injury prong" of the UCL.  (*Jenkins v. JP Morgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 522.)  In addition, the Dampfs allege that they "surrendered" to the Bank of America defendants more than they otherwise would have due to the increase in monthly payments caused by the improper tax and insurance impound, and that they suffered a "negative impact on their credit." (See *Velasquez v. Chase Home Finance LLC* (N.D.Cal. 2010) 2010 WL 3211905, p. 7, fn. 6 ["[e]xamples of loss of money or property sufficient to confer standing under the UCL include allegations of damage to a consumer's credit score, or payment of extra money as a result of defendant's conduct"].)

Finally, unlike borrowers whose injuries are caused by their default rather than any unfair or fraudulent practices by the lender,[11] the Dampfs allege a connection between their injury and the Bank of America defendants' unfair and fraudulent practices.  The Dampfs allege that they were not in default prior to the Bank of America defendants' conduct of making misrepresentations about the Dampfs' loan modification application and wrongfully impounding money for taxes and insurance.  Moreover,

---

[11]     E.g., *Graham v. Bank of America, N.A.*, *supra*, 226 Cal.App.4th at p. 614; *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 82; *Jenkins v. JP Morgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at pp. 522-523.

although "costs incurred in preparing and assembling materials . . . for a loan modification" may be "de minimis" and "not sufficient to qualify as injury in fact under" the UCL (*Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 82; but see *Fleet v. Bank of America N.A.*, *supra*, 229 Cal.App.4th at p. 1411 [plaintiffs alleged damage element of fraud claim by alleging "the loss of the money they expended jumping through hoops, running around in circles, and talking to walls"]), we cannot say at the pleadings stage that amount of money the Bank of America defendants wrongfully impounded for taxes and insurance, and the money the Bank of America defendants obtained from the Dampfs' personal and retirement savings, are insufficient to qualify as injuries in fact.

The Dampfs, however, did not state a claim for unfair competition against BNY Mellon. BNY Mellon is not named in the Dampfs' causes of action for intentional misrepresentation, negligent misrepresentation, promissory estoppel, or negligence. BNY Mellon is named only in the causes of action for wrongful foreclosure and declaratory relief, neither of which states a claim against BNY Mellon. "Because the underlying causes of action fail, the derivative UCL . . . claim[] also fail[s]." (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147.) In addition, because, as discussed, Civil Code section 2923.5 does not apply to deeds of trust, any failure by BNY Mellon to comply with the statute cannot constitute unfair competition. Finally, the Dampfs have not alleged that any wrongful conduct on the part of BNY Mellon, as opposed to conduct by the Bank of America defendants, caused them economic injury.

G. *Negligence*

The allegations in the Dampfs' negligence cause of action repeat the allegations in the Dampfs' misrepresentation and promissory estoppel causes of action. The Dampfs allege that the Bank of America defendants breached a duty of care owed to the Dampfs (1) "by deceitfully and unreasonably promising [the Dampfs] that they would review their loan for a modification and carrying out the process for over twenty months, when they never intended to offer a modification"; (2) "when they intentionally lied to [the

30

Dampfs] concerning their application for a loan modification and drug [*sic*] out the process for over 20 months with the intent to drain [the Dampfs] of their savings and retirement funds and force them into foreclosure"; and (3) "by intentionally increasing [the Dampfs'] monthly principal and interest payments by placing forced . . . insurance and paying for taxes on [the Dampfs'] loan when there was no deficiency in taxes or insurances payments." Other than these allegedly negligent (or, in the case of allegations (2) and (3), intentional) misrepresentations, the Dampfs do not allege that the Bank of America defendants were otherwise negligent in how they processed the Dampfs' loan application. We therefore do not reach the issue of whether the Dampfs can state a claim for negligence based on a breach of a duty of care by the Bank of America defendants in processing the Dampfs' loan modification application, independent of the alleged misrepresentations the Dampfs identify in their complaint. (See *Alvarez v. BAC Home Loans Servicing, L.P.*, *supra*, 228 Cal.App.4th at pp. 946-947; *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 68; *Jolley v. Chase Home Finance, LLC*, *supra*, 213 Cal.App.4th at p. 901.) The Dampfs may proceed on their negligence claim to the extent it is based on alleged misrepresentations by the Bank of America defendants. (See *Rufini v. CitiMortgage, Inc.*, *supra*, 227 Cal.App.4th at p. 309 [lenders do not "have a free pass to misrepresent important facts with impunity when they negotiate loan modifications"].)

## DISPOSITION

The judgment is reversed. The trial court is directed to enter a new order overruling the demurrers to the Dampfs' causes of action for intentional misrepresentation, negligent misrepresentation, negligence, and promissory estoppel, and sustaining the demurrers to the Dampfs' causes of action for wrongful foreclosure and declaratory relief without leave to amend. With respect to the Dampfs' cause of action for unfair competition, the trial court is directed to enter an order overruling the demurrer

31

by the Bank of America defendants and sustaining the demurrer by BNY Mellon without leave to amend.  The Dampfs are to recover their costs on appeal.


SEGAL, J.*


We concur:


PERLUSS, P. J.


WOODS, J.


---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.